Filed:  January 28, 2011

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1740
(1:08-cv-01076-AMD

SHIRLEY  M.  BARBOUR;  HARRY  M.  BARKER;  ANTHONY  BURTON;
WILLIAM J. CLINE; BARBARA FAULKNER; RAYMOND N. FLECK, JR.;
ARTHUR HAMILTON, II; DANIEL L. HAMM; TROY L. HARRIS; GARY
LANDAU; VINCENT MARRA; PEGGY A. MURPHY; RICHARD DOUGLAS
PERMENTER;  PATRICIA  PIERSON;  JEFFREY  N.  ROBERTS;  ANNIE
SMITH RODGERS; REESS H. SCOTT; JOYCE SEE; RONEY SMITH; FRED
M. STEWART; DANIEL LEE TICHNELL; ROBERT THOMAS; CHARLES F.
WADKINS,

            Plaintiffs - Appellants,

            v.

INTERNATIONAL   UNION,   UNITED   AUTOMOBILE,   AEROSPACE   AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; LOCAL NO. 1183 OF
INTERNATIONAL   UNION,   UNITED   AUTOMOBILE,   AEROSPACE   AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; LOCAL NO. 1212 OF
INTERNATIONAL   UNION,   UNITED   AUTOMOBILE,   AEROSPACE   AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,

            Defendants - Appellees.

------------------------------

AMERICAN  FEDERATION  OF  LABOR  AND  CONGRESS  OF  INDUSTRIAL
ORGANIZATIONS,

            Amicus Supporting Appellees.

O R D E R

        The  Court  amends  its  opinion  filed  January  27,  2011,

as follows:

On page 7, first full paragraph, line 3 -- April 28, 2009, is corrected to read April 28, 2008.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

2

# ON REHEARING EN BANC

# PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHIRLEY M. BARBOUR; HARRY M.
BARKER; ANTHONY BURTON;
WILLIAM J. CLINE; BARBARA
FAULKNER; RAYMOND N. FLECK, JR.;
ARTHUR HAMILTON, II; DANIEL L.
HAMM; TROY L. HARRIS; GARY
LANDAU; VINCENT MARRA; PEGGY
A. MURPHY; RICHARD DOUGLAS
PERMENTER; PATRICIA PIERSON;
JEFFREY N. ROBERTS; ANNIE SMITH
RODGERS; REESS H. SCOTT; JOYCE
SEE; RONEY SMITH; FRED M.
STEWART; DANIEL LEE TICHNELL;          No. 08-1740
ROBERT THOMAS; CHARLES F.
WADKINS,

     *Plaintiffs-Appellants,*

     v.

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA; LOCAL NO. 1183 OF
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS

OF AMERICA; LOCAL NO. 1212 OF
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA,

   *Defendants-Appellees.*

AMERICAN FEDERATION OF LABOR
AND CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

   *Amicus Supporting Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:08-cv-01076-AMD)

Argued: September 23, 2010

Decided: January 27, 2011

Before TRAXLER, Chief Judge, WILKINSON,
NIEMEYER, MOTZ, KING, GREGORY, SHEDD,
DUNCAN, AGEE, KEENAN, and WYNN, Circuit Judges,
and HAMILTON, Senior Circuit Judge.*

Vacated and remanded by published opinion. Senior Judge
Hamilton wrote the opinion, in which Judges Motz, King,
Gregory, Shedd, Keenan, and Wynn joined. Judge Agee wrote

 *Judges Michael, Davis, and Diaz did not sit with the *en banc* court or
participate in this decision.

a separate opinion concurring in the judgment, in which Chief Judge Traxler and Judges Wilkinson, Niemeyer, and Duncan joined.

## COUNSEL

**ARGUED:** Thomas C. Costello, COSTELLO LAW GROUP, Baltimore, Maryland, for Appellants. Ava Barbour, INTERNATIONAL UNION, UAW, Detroit, Michigan, for Appellees. James B. Coppess, AFL-CIO, Washington, D.C., for Amicus Supporting Appellees. **ON BRIEF:** John H. West, III, WEST & COSTELLO, LLC, Baltimore, Maryland, for Appellants. Wendy L. Kahn, Jeffrey W. Burritt, ZWERDLING, PAUL, KAHN & WOLLY, PC, Washington, D.C., for Appellees. Lynn K. Rhinehart, Lorrie E. Bradley, AFL-CIO, Washington, D.C., for Amicus Supporting Appellees.

## OPINION

HAMILTON, Senior Circuit Judge:

Twenty-three former employees (the Retirees) of Chrysler Corporation (Chrysler) brought this action against the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the International), Local No. 1183 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Local 1183), and Local No. 1212 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Local 1212), in the Circuit Court for Cecil County, Maryland.[1] The UAW removed the action to the United States District Court for the District of Maryland,

---

[1] We refer to the International, Local 1183, and Local 1212 collectively as the UAW.

alleging that the claims asserted by the Retirees were completely preempted by federal labor law. After the UAW sought Rule 12(b)(6) dismissal on a variety of grounds, the Retirees moved to remand the case back to Maryland state court, alleging that the notice of removal was untimely filed, and, alternatively, that their claims were not completely preempted. The district court denied the motion to remand, holding that the notice of removal was timely filed. The district court also granted the motion to dismiss, holding that, although the Retirees' claims were completely preempted, the claims were barred by the six-month statute of limitation contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). The Retirees challenge these rulings on appeal. For the reasons stated below, we agree with the Retirees that the district court erred when it denied the motion to remand, because the UAW's notice of removal was untimely filed. Accordingly, we vacate the district court's judgment and remand the case to the district court with instructions to remand the case to Maryland state court. In light of our holding on the removal issue, we do not reach the Retirees' arguments concerning the district court's preemption and statute of limitation rulings.

I

Prior to their January 31, 2007 retirement from Chrysler, the Retirees were employed by Chrysler at its automobile assembly plant (the Plant) in Newark, Delaware. Each of the Retirees were members of the International, and were members of either Local 1183 or Local 1212.

By the end of 2006, each of the Retirees had the requisite years of service with Chrysler to qualify for retirement with full benefits. However, each of the Retirees faced a difficult retirement decision. Through a variety of sources, including, but not limited to, statements from representatives and officers of the International, Local 1183, and Local 1212, the Retirees became aware that Chrysler was planning to reduce

the size of its work force and that the Plant was "a prime candidate for a work force reduction." (J.A. 27). Based on their previous experience with work-force reductions, the Retirees believed that it was in their best interests to continue to work and forego retirement in order to determine whether the work-force reduction would include financial incentives to retirement-eligible employees.

Desiring to reap the benefit of any financial incentives to retirement-eligible employees, the Retirees sought the advice and counsel of the UAW to determine the "best course of action to preserve their eligibility to receive the financial benefits of a retirement package." (J.A. 28). According to the Retirees, the UAW advised them to delay their retirement until January 31, 2007, because, "by retiring in the calendar year 2007, any retirement package offered in 2007 would include the [Retirees] and any other UAW member who retired during the year 2007." (J.A. 28). Based on this advice, the Retirees submitted the required paperwork to effectuate a retirement date of January 31, 2007.

Between the time they submitted their retirement paperwork and January 31, 2007, many of the Retirees received information that the offer of a retirement package to retirement-eligible employees was "imminent." (J.A. 28). Consequently, some of the Retirees considered withdrawing their retirement paperwork and continuing to work until a firm announcement concerning financial incentives to retirement-eligible employees was made. In response, UAW representatives and officers informed the Retirees that it was unnecessary to withdraw their paperwork, because no retirement package was "'coming down'" and that any retirement package offered in 2007 would be retroactive to January 31, 2007 and include all who retired on or after that date in 2007. (J.A. 29). Relying on these representations, each of the Retirees retired on January 31, 2007.

Two weeks later, Chrysler announced that it would be offering retirement incentive packages, with the agreement

and approval of the UAW, for eligible employees at the Plant. The retirement package offered had a value of approximately $70,000 for each retiring employee. However, the terms of the retirement package approved and agreed to by the UAW excluded the Retirees, because the retirement package applied prospectively, not retroactively.

On February 11, 2008, the Retirees filed a two-count complaint in the Circuit Court for Cecil County, Maryland. Count One asserted a claim under Maryland state law for negligent misrepresentation. The Retirees alleged that the UAW "owed [them] both legal and fiduciary duties . . . to disclose all material facts with regard to the status of the UAW's negotiations with Chrysler to the extent those negotiations impacted [the Retirees'] decision to retire." (J.A. 52-53). Count One also alleged that the UAW "had a duty to refrain from misrepresenting and omitting material facts regarding" such negotiations. (J.A. 53). The Retirees alleged that the UAW "made at least one or more of the following material misrepresentations of fact": (1) "No retirement package was 'coming down' or being currently negotiated by the UAW with Chrysler"; and (2) "Any retirement package negotiated between the UAW and Chrysler in 2007 would be retroactive and would apply to any employee who retired on or after January 31, 2007." (J.A. 53).

Count Two asserted a negligence claim under Maryland state law. This count alleged that the UAW breached "duties of care, fidelity and loyalty to ensure that all material facts regarding their relationship were fully disclosed and all actions taken on behalf of [the Retirees] were for their protection and in their best interests." (J.A. 55). The UAW allegedly breached such duties by failing to: (1) "advise [the Retirees] of the true nature and extent of their negotiations with Chrysler"; (2) keep the officers and representatives of Locals 1183 and Local 1212 apprised of the true nature and extent of the International's negotiations with Chrysler; and (3) "warn [the Retirees] that voluntary retirement of their employment

before the official announcement of a retirement package would preclude them from being eligible for the receipt of future retirement packages offered during the 2007 calendar year." (J.A. 55-56).

The International was served with a copy of the complaint on March 20, 2008. Local 1183 was served with process on March 29, 2008. On April 28, 2008, more than thirty days after service on the International, but within thirty days of service on Local 1183, but before Local 1212 was served, all three defendants filed a joint notice of removal in the United States District Court for the District of Maryland.

According to the notice of removal, "[a]lthough [the Retirees] characterize their claims as state law claims, the duty of care that [the Retirees] maintain[] it is owed from [the UAW] . . . is the duty of fair representation, . . . which arises from UAW's status from its exclusive bargaining authority pursuant to section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159." (J.A. 13). The notice further averred that, "[b]ecause the NLRA is an 'act regulating interstate commerce,' this Court has jurisdiction pursuant to 28 U.S.C. § 1337." (J.A. 13).

On May 5, 2008, the UAW filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the motion, the UAW argued, among other things, that the Retirees' claims were barred by the six-month statute of limitation contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).

On May 28, 2008, the Retirees filed a motion to remand the case to Maryland state court. According to the Retirees, the notice of removal was untimely, and, alternatively, there was no basis for federal jurisdiction. On June 12, 2008, the district court issued a memorandum and order denying the Retirees' motion to remand and granting the UAW's motion to dismiss. The district court did not specifically address the timeliness of

the UAW's removal. Rather, the district court noted that the Retirees had "artfully" attempted to "'plead around' the pre-emptive force of federal labor law" and that their state law claims were "completely pre-empted by the federal duty of fair representation" in § 9(a) of the National Labor Relations Act, *id.* § 159(a). (J.A. 127). The district court found that "[t]he breach of that duty, if any, is a matter of federal, not state, law." (J.A. 127). Concurrent with its denial of the Retirees' motion to remand, the district court granted the UAW's motion to dismiss, concluding that the claims were barred by the six-month statute of limitation contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).

On June 13, 2008, the Retirees filed a motion for reconsideration. On the same day, the district court denied the motion. The district court held that the joint notice of removal was timely filed, noting that the "case . . . [provides] an excellent opportunity for the Fourth Circuit to clarify whether the 'first-filed' 'dictum'" in *McKinney v. Board of Trustees of Mayland Community College*, 955 F.2d 924 (4th Cir. 1992), "means what it actually seems to say." (J.A. 132). The district court also reaffirmed its earlier ruling on the preemption issue, but, curiously, the district court did not address the Retirees' request for reconsideration of the statute of limitation issue.

The Retirees noted a timely appeal. On appeal, a divided panel of this court affirmed the district court's ruling that the joint notice of removal had been timely filed, but reversed its holding that the Retirees' claims were completely preempted by federal labor law. *See Barbour v. Int'l Union*, 594 F.3d 315 (4th Cir. 2010). On May 6, 2010, the panel opinion was vacated, as a majority of active circuit judges voted to rehear this case en banc. *See* Fourth Circuit Local Rule 35(c) ("Granting of rehearing *en banc* vacates the previous panel judgment and opinion.").

## II

On appeal, the Retirees first challenge the district court's ruling that the joint notice of removal was timely filed. Our

review is *de novo*. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006) ("For questions concerning removal to federal court, our standard of review is *de novo*.").

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). We presume "that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* Removal statutes, in particular, must be strictly construed, inasmuch as the removal of cases from state to federal court raises significant federalism concerns. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) ("The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution."); *see also Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *Maryland Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (noting our duty to construe removal jurisdiction strictly because of the significant federalism concerns implicated by removal). Doubts about the propriety of removal should be resolved in favor of remanding the case to state court. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (*en banc*); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

Section 1441(a) of Title 28 of the United States Code provides that "the defendant or the defendants" may seek to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Section 1446 of Title 28 describes the

appropriate removal procedure to invoke federal jurisdiction, and requires the defendant seeking removal to file a timely notice of removal stating the grounds for removal with the appropriate federal district court. *Id.* §§ 1446(a) & (b). In order to be timely,

> [t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

*Id.* § 1446(b). The thirty-day window for removal is designed to prevent "undue delay in removal and the concomitant waste of state judicial resources." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997).

If a case involves a single defendant, the operation of § 1446(b) is straightforward. The defendant must file the notice of removal within thirty days of service. When a case involves multiple defendants, the operation of § 1446(b) gets precarious, because, unlike § 1446(a), § 1446(b) does not speak in terms of multiple defendants. Clearly, if all of the defendants are served on the same day, the notice of removal must be filed within thirty days of the date of service, and all the defendants must consent to and join the notice of removal. *See Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985) (noting that "all of the defendants must agree to the removal of the state court action"); *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006) (noting that all served defendants must join in the notice of removal); *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997) (same). However, if the defendants are served on different days, two questions arise. First, must the notice of removal be filed within thirty days of service on the first-served defendant or can the notice be filed within thirty days of service on the last-served defendant? Second, if the

notice of removal must be filed within thirty days of service on the first-served defendant, do all of the defendants have to join the notice within thirty days of service on the first-served defendant or can each defendant join within thirty-days of the date they are served?

The first circuit court to tackle the defendants-served-on-different-days dilemma was the Fifth Circuit in *Brown v. Demco, Inc.*, 792 F.2d 478 (5th Cir. 1986). In that case, the plaintiff filed an action in Louisiana state court and promptly served the then-existing defendants. *Id.* at 480. After a lengthy period of discovery, the plaintiff added two additional defendants. *Id.* The additional defendants promptly sought removal, with the consent of the original-served defendants. *Id.* In response, the plaintiff and the intervenor-insurer moved to remand the case to state court on the ground that the removal was untimely. *Id.* The district court denied the motion, and the intervenor-insurer sought and obtained permission to appeal. *Id.*

On appeal, the *Brown* court reversed. After finding that the intervenor-insurer had standing to challenge the denial of the motion to remand, the *Brown* court observed that "[t]he general rule . . . is that '[i]f the first served defendant abstains from seeking removal or does not effect a timely removal, subsequently served defendants cannot remove . . . due to the rule of unanimity among defendants which is required for removal.'" *Id.* at 481 (quoting *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 326-27 (5th Cir. 1970)). In so observing, the *Brown* court rejected the notion that the "general rule" was unfair because it prevented later-served defendants from persuading earlier-served defendants to remove the case:

> [W]e do not perceive the suggested unfairness to the subsequently added defendant who is merely not granted an opportunity that might have been available to others. A defendant who is added to a case

> in which a co-defendant has failed to seek removal
> is in no worse position than it would have been in if
> the co-defendant had opposed removal or were
> domiciled in the same state as the plaintiff.

*Id.* at 482.

The *Brown* court only answered the first question—when must the notice of removal be filed—posed by the defendants-served-on-different days dilemma. Two years later, however, in *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254 (5th Cir. 1988), the Fifth Circuit addressed the second question, that is, whether later-served defendants must join the notice of removal within the first-served defendant's thirty-day window. The court answered the question in the affirmative, adopting what is commonly referred to as the "First-Served Defendant Rule." *Id.* at 1262-63. Succinctly put, the First-Served Defendant Rule requires a notice of removal to be filed within thirty days of service on the first-served defendant and requires all defendants to join the notice of removal within the first-served defendant's thirty-day window.

In *Getty Oil*, three defendants were served, the first on September 3, 1986, the second on September 5, 1986, and the third on September 24, 1986. *Id.* at 1256. The first and second defendants petitioned for removal on September 26, 1986, but the third defendant joined the petition on October 24, 1986, which was thirty days after it was served but fifty-one days after the first defendant was served. *Id.* The *Getty Oil* court held that: (1) a notice of removal must be filed within thirty days of the date of service on the first-served defendant and (2) a later-served defendant must join the notice of removal "no later than thirty days from the day on which the first defendant was served." *Id.* at 1263. In so holding, the *Getty Oil* court reasoned that the First-Served Defendant Rule

> promotes unanimity among the defendants without
> placing undue hardships on subsequently served

> defendants. Indeed, if a removal petition is filed by a served defendant and another defendant is served after the case is thus removed, the latter defendant may still either accept the removal or exercise its right to choose the state forum by making a motion to remand.

*Id.* (footnote omitted). The court also noted that, "by restricting removal to instances in which the statute clearly permits it, the [First-Served Defendant Rule] is consistent with the trend to limit removal jurisdiction and with the axiom that the removal statutes are to be strictly construed against removal." *Id.* n.13.

Almost four years after *Getty Oil*, we addressed the two questions raised by the defendants-served-on-different-days dilemma and adopted what is commonly referred to as the "*McKinney* Intermediate Rule." Like the First-Served Defendant Rule, the *McKinney* Intermediate Rule requires a notice of removal to be filed within the first-served defendant's thirty-day window, but gives later-served defendants thirty days from the date they were served to join the notice of removal.

In *McKinney*, a group of dismissed employees of Mayland Community College sued the college's board of trustees in their individual and official capacities in North Carolina state court, alleging unlawful discharge. 955 F.2d at 925. Three of the twelve defendants were served on April 25, 1988, while eight others were served on May 19, 1988. *Id.* The three members of the first group and seven of the eight from the second group filed for removal on May 25, 1998, thirty days after service on the first three. *Id.* The defendants could not find the eighth defendant in the second group to obtain her consent to the notice of removal. *Id.* The plaintiffs served the final, twelfth defendant after the filing of the notice of removal. *Id.* The eighth and twelfth defendants joined in the notice of removal on June 20, 1998, which was the thirtieth

day from the time of service on the eighth defendant and well within the time limit for the twelfth defendant, but more than thirty days after the first three defendants had been served. *Id.*

In moving to remand the case to state court, the plaintiffs argued that the defendants were required to consent to the notice of removal within thirty days of service on the first group of defendants. *Id.* The district court rejected that contention, holding that individual defendants have thirty days from the time they are served with process or with a complaint to join in an otherwise valid notice of removal. *Id.*

Our decision in *McKinney* addressed both of *Getty Oil*'s holdings concerning the timeliness of removal. With regard to *Getty Oil*'s first holding, we noted our explicit agreement with that holding, stating that the first-served defendant "clearly must petition for removal within thirty days." *Id.* at 926. In Footnote 3 of our opinion, we agreed with the necessary corollaries to the principle that a timely notice of removal must be filed within thirty days of service on the first-served defendant:

> In a different situation, where B is served more than 30 days after A is served, two timing issues can arise, and the law is settled as to each. First, if A petitions for removal within 30 days, the case may be removed, and B can either join in the petition or move for remand. . . . Second, if A does not petition for removal within 30 days, the case may not be removed.

*Id.* at 926 n.3.[2]

---

[2]Some courts in our circuit have viewed Footnote 3 and our approval of *Getty Oil*'s first holding as *dicta*, opining that it was not necessary for the *McKinney* court to determine whether a notice of removal must be filed within thirty days of service on the first-served defendant. *See, e.g., Superior Painting & Contracting Co. v. Walton Tech., Inc.*, 207 F. Supp.

With regard to *Getty Oil*'s second holding, that a later-served defendant must join the notice of removal within thirty days of the date of service on the first-served defendant, we rejected that holding. In doing so, we made three observations. First, we observed that nothing in § 1446(b) implied "in any way that later served defendants have less than thirty days in which to act." *Id.* Second, we observed that it would be "inequitable" to require a later-served defendant to join a timely filed notice of removal within thirty days of the date of service on the first-served defendant. *Id.* at 927. Third, we observed that to require a later-served defendant to join a timely filed notice of removal within thirty days of the date of service on the first-served defendant would necessitate adding the term "first" before "defendant" in § 1446(b). *Id.*

We then turned to plaintiffs' argument that they should be entitled to know within a prescribed period of time whether the case will proceed in state or federal court. In rejecting this argument, we first noted that, if the plaintiffs wanted to know in which court they will be at the earliest possible date, they need only to make sure that all defendants are served at about the same time. *Id.* Second, we noted that the plaintiffs' entitlement was no greater than the defendant's right to remove a case that could be heard in federal court. *Id.*

---

2d 391, 393 n.4 (D. Md. 2002) (opining that Footnote 3 and our approval of *Getty Oil*'s first holding are *dicta*); *Branch v. Coca-Cola Bottling Co. Consol.*, 83 F. Supp. 2d 631, 634 (D.S.C. 2000) (same). Nevertheless, only one district court in this circuit has declined to follow the *McKinney* Intermediate Rule. *See Ratliff v. Workman*, 274 F. Supp. 2d 783, 787 (S.D. W. Va. 2003) (declining to follow *McKinney* Intermediate Rule because of intervening Supreme Court precedent, namely, *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999)). As the court is sitting *en banc*, it is unnecessary to decide whether Footnote 3 and our approval of *Getty Oil*'s first holding are *dicta*. *Cf. Hoffman v. Hunt*, 126 F.3d 575, 584 (4th Cir. 1997) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent *en banc* opinion of this court or a superseding contrary decision of the Supreme Court.") (citations and internal quotation marks omitted).

Finally, we considered a policy concern in *McKinney*, which was not present when *Getty Oil* was decided. In 1988, Congress amended § 1446(a) to make notices of removal subject to Rule 11 of the Federal Rules of Civil Procedure. *Id.* at 928. We observed that, as amended, § 1446(a) is a further reason to allow all defendants a full thirty days to investigate the appropriateness of removal. *Id.* Otherwise, a later-served defendant faces a Hobson's Choice: either to join hurriedly in a notice of removal and face possible Rule 11 sanctions or to forego removal. *Id.* In the *McKinney* court's view, Congress did not intend to impose such a Hobson's Choice on a later-served defendant. *Id.*

Since our decision in *McKinney*, three other circuits have addressed the defendants-served-on-different days dilemma and have rejected the First-Served Defendant Rule and the *McKinney* Intermediate Rule in favor of what is commonly referred to as the "Last-Served Defendant Rule." *See Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1209 (11th Cir. 2008); *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999). In a nutshell, the Last-Served Defendant Rule "permits each defendant, upon formal service of process, thirty days to file a notice of removal pursuant to § 1446(b)," *Bailey*, 536 F.3d at 1209, and "[e]arlier-served defendants may choose to join in a later-served defendant's motion or not." *Id.* at 1207.

In *Brierly*, the plaintiff filed a wrongful death action in Kentucky state court on May 12, 1994, naming two defendants. 184 F.3d at 530. The first was promptly served in June 1994, but the second was not served until the fall of 1995. *Id.* at 530-31. Within thirty days of being served, the second defendant filed a notice of removal which was consented to by the first defendant. *Id.* at 531. Thereafter, the district court denied the plaintiff's motion to remand. *Id.*

In adopting the Last-Served Defendant Rule, the *Brierly* court opined that adopting the First-Served Defendant Rule

would require the court to insert the word "'first'" into § 1446(b). *Brierly*, 184 F.3d at 533. The court also observed that, "[i]f Congress had intended the 30-day removal period to commence upon service of the first defendant, it could have easily so provided." *Id.* Finally, the court was persuaded that the Last-Served Defendant Rule was necessary "as a matter of fairness to later-served defendants." *Id.*

In *Marano*, the plaintiff filed a fraud and breach of contract action in Missouri state court. 254 F.3d at 754. Two of the defendants were served on February 1, 2000, and two were served on February 3, 2000. *Id.* On March 3, 2000, thirty-one days after the February 1 service, but twenty-nine days after the February 3 service, all the defendants (including the fifth and final defendant who had not yet been served) jointly filed a notice of removal. *Id.* The plaintiff filed a motion to remand, which the district court denied. *Id.*

In its analysis, the *Marano* court outlined the holdings of the Fifth Circuit in *Brown* and *Getty Oil*, our circuit in *McKinney*, and the Sixth Circuit in *Brierly* and, without discussion, found none of the positions "particularly compelling" because they are all "susceptible to abuse and have potential to create inequities." *Id.* at 756. However, the *Marano* court was persuaded to adopt the Last-Served Defendant Rule based on the Supreme Court's decision in *Murphy Brothers*. *Id.* at 756-57. In *Murphy Brothers*, the Court held that a defendant's time to remove "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." 526 U.S. at 348. According to the *Marano* court,

> [In *Murphy Brothers,*] [t]he Court held that formal process is required, noting the difference between mere notice to a defendant and official service of process: "An individual or entity named as a defendant is not obliged to engage in litigation unless noti-

fied of the action, and brought under a court's authority, by formal process." . . . Thus, a defendant is "required to take action" as a defendant—that is, bound by the thirty-day limit on removal—"only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." . . . The Court essentially acknowledged the significance of formal service to the judicial process, most notably the importance of service in the context of the time limits on removal (notwithstanding an earlier admonition by the Court in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941), for strict construction of the removal statute). We conclude that, if faced with the issue before us today, the Court would allow each defendant thirty days after receiving service within which to file a notice of removal, regardless of when—or if—previously served defendants had filed such notices.

254 F.3d at 756.

In *Bailey*, the plaintiff brought a wrongful death action in Florida state court on February 28, 2006. 536 F.3d at 1204. The first defendant was served on May 12, 2006, the second on May 15, 2006, the third on May 19, 2006, and the fourth on June 22, 2006. *Id.* On July 24, 2006 (July 22 was a Saturday), the fourth-served defendant filed a notice of removal of the action based on complete diversity pursuant to § 1446(b). *Id.* The plaintiff filed a motion to remand, which the district court denied. *Id.*

On appeal, the *Bailey* court put forth a variety of reasons supporting its decision to adopt the Last-Served Defendant Rule. *Id.* at 1205-09. First, the court recognized that the Last-Served Defendant Rule was the more recent trend in the case law. *Id.* at 1205-06. Second, the court was driven by equitable

considerations, expressing concern that the First-Served Defendant Rule: (1) causes later-served defendants to lose their statutory right of removal through no fault of their own; and (2) eliminates the opportunity for later-served defendants to persuade earlier-served defendants to seek removal. *Id.* at 1206-07. Third, the *Bailey* court reasoned that the First-Served Defendant Rule requires reading "first-served" into § 1446(b), whereas § 1446(b), "as written, could reasonably be read to permit each defendant a right to remove within thirty days of service on the individual defendant." *Id.* at 1207. Fourth, the *Bailey* court was not convinced that the First-Served Defendant Rule was more consistent with the rule of unanimity than the Last-Served Defendant Rule *Id.* Finally, the *Bailey* court agreed with the *Marano* court that the Supreme Court's decision in *Murphy Brothers* supported the endorsement of the Last-Served Defendant Rule. *Id.* at 1207-09.

In our view, the *McKinney* Intermediate Rule is the most logical and faithful interpretation of the operation of § 1446(b). When interpreting any statute, we must first and foremost strive to implement congressional intent by examining the plain language of the statute. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Section 1446(b) says that if you are a defendant in a cause of action you are under an obligation to seek removal within thirty days of receipt of the plaintiff's complaint. If you do not seek removal within the thirty-day window, you have forfeited your right to remove. Here, because the International did not seek removal within its thirty-day window, the plain language of § 1446(b) dictates that it forfeited its right to removal.

The question, then, is whether we should decline to follow the plain language of § 1446(b) simply because there is more than one defendant in the case who was served on a different day. In our view, it defies logic to read § 1446(b) any differently based on this circumstance, because the language of § 1446(b) unequivocally requires action by a defendant (seeking removal within thirty days of being served), not inaction. Equally illogical is the proposition that a first-served defendant in a multiple-defendant case should believe he or she does not have to act simply because there will be later-served defendants in the case who may or may not file a notice of removal. In such a scenario, the first-served defendant's excuse for failing to file a timely notice of removal borders on preposterous—"I did not file a notice of removal because I was 'a' defendant instead of 'the' defendant."

To be sure, it seems eminently reasonable that, in drafting § 1446(b), Congress intended for the first-served defendant to decide within his thirty-day window whether to remove the case to federal court or allow the case to remain in state court. Such routine removal decisions are made day-in and day-out in courts all across the Nation. If the first-served defendant decides not to remove, later-served defendants are not deprived of any rights under § 1446(b), because § 1446(b) does not prevent them from removing the case; rather, it is the rule of unanimity that does. In other words, once the first-served defendant elects to proceed in state court, the issue concerning removal is decided under the rule of unanimity. Alternatively, if the first-served defendant does file a notice of removal, the later-served defendants dictate whether the case remains in federal court, either by joining the notice or declining to do so.

There is a "'strong presumption' that the plain language of the statute expresses congressional intent," *Ardestani v. INS*, 502 U.S. 129, 135 (1991), and it is only in rare and exceptional cases where this presumption is rebutted. *Id.* In this case, we see no reason to depart from applying the plain lan-

guage of § 1446(b) and letting each defendant, beginning with the first-served defendant, decide whether the case should be removed. If the first-served defendant files a notice of removal, later-served defendants have ample time—thirty days from the date that each such defendant is served—to decide whether to join the notice of removal, thus avoiding the Hobson's Choice we identified in *McKinney*. While the operation of § 1446(b) may appear unfair to some, such operation is an inevitable feature of a court of limited jurisdiction. *Cf. Russell Corp. v. American Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) ("There are several such bright line limitations on federal removal jurisdiction (e.g. the removal bar for in-state defendants and the one year time limit for diversity removals) that some might regard as arbitrary and unfair. Such limitations, however, are an inevitable feature of a court system of limited jurisdiction that strictly construes the right to remove.").

The *McKinney* Intermediate Rule obviously avoids the fatal flaw in the Last-Served Defendant Rule: The Last-Served Defendant Rule only applies § 1446(b) to one defendant—the last-served. Innumerable defendants can intentionally ignore § 1446(b) if the last-served defendant can convince the earlier-served defendants that their intentional decision was in error.[3] It strains credulity to conclude that Congress intended to allow defendants to flagrantly ignore § 1446(b).

In contrast to the Last-Served Defendant Rule, the *McKinney* Intermediate Rule seeks to apply § 1446(b)'s requirement to act within thirty days of service to *all* defendants, including the first- and last-served. As noted above, the first-served defendant must file a notice of removal within thirty days of service; later-served defendants have to join the notice within thirty days of service upon them. Interpreting § 1446(b)'s

---

[3]Counsel for the UAW candidly conceded at oral argument that she was pressing for a rule that would apply § 1446(b) to only *one* defendant (*i.e.*, the last-served) in a defendants-served-on-different-days case.

within thirty days of service requirement as applying to all defendants instead of just one, in our opinion, carries out Congress' intent in drafting the statute, and avoids reading the words "first-served" or "last-served" into § 1446(b).[4]

It is also worth noting that, under the *McKinney* Intermediate Rule, the later-served defendants are in no worse position than they would have been if the parties in the case were not completely diverse or the first-served defendant (or any other defendant) had opposed removal. *See Brown*, 792 F.2d at 482 ("A defendant who is added to a case in which a co-defendant has failed to seek removal is in no worse position than it

---

[4]We recognize that § 1446(b) does not specifically address joinder. However, it is clear that Congress, in drafting § 1446(b), sought to require every defendant to take action seeking removal within thirty days of service. Such action either is in the form of filing a notice of removal or joining an existing notice. If all defendants act within thirty days of service, as recognized in *McKinney*, we avoid reading "first[-served]" into § 1446(b). 955 F.2d at 927. This Congressional intent and other equitable considerations lead us to reject the First-Served Defendant Rule in favor of the *McKinney* Intermediate Rule. The *McKinney* court sought to fashion a joinder rule that would be fair to both plaintiffs and defendants. Understandably, we concluded that, once a timely petition was filed within the initial thirty-day window, each later-served defendant should have thirty-days from the date of service in which to join the petition for removal, because § 1446(b) allows each defendant thirty days in which to act, and, perhaps more importantly, at that point in time state interests are minimal (the case is removed) and no defendant has acted in an untimely manner. Following the First-Served Defendant Rule would require a later-served defendant to join the petition within the initial thirty-day window, even though service on that defendant may have occurred more than thirty days after service on the first-served defendant. This rule, in our view, not only is contrary to § 1446(b)'s allowance for action within thirty days of service, but it also penalizes a defendant who has not acted in an untimely manner. In contrast to the *McKinney* Intermediate Rule, the Last-Served Defendant Rule allows all of the defendants, except the last-served, to both ignore § 1446(b)'s thirty-day action requirement and act in an untimely fashion; obviously, the Last-Served Defendant Rule, which allows a defendant to act in such a fashion, does not vindicate state interests, as the rule requires, at least in some cases, for the state court to unnecessarily retain jurisdiction over a particular case.

would have been in if the co-defendant had opposed removal or were domiciled in the same state as the plaintiff."). As Judge Shedd aptly noted in his district court opinion in *Branch*, "[t]he Court sees no reason why [the first-served defendant's] failure to remove in a timely manner should be viewed differently simply because another defendant is in the case." 83 F. Supp. 2d at 636.

Finally, it is evident that the *McKinney* Intermediate Rule is in line with admonitions from the Supreme Court and this court that we should construe removal statutes narrowly and that doubts concerning removal should be resolved in favor of state court jurisdiction. The *McKinney* Intermediate Rule requires the first-served defendant to act in a timely manner to achieve removal. If later-served defendants desire removal, they need only join a notice of removal that has been filed in compliance with the time requirements of § 1446(b) and within thirty days of the date they were served. Such interpretation of § 1446(b) is narrow because it requires compliance from the outset. Moreover, to the extent there is doubt as to which rule is the most appropriate, it stands to reason that the doubt should be resolved in favor of the interpretation that requires initial—rather than later—compliance with § 1446(b).

In sum, we adhere to the *McKinney* Intermediate Rule, as this court has for close to nineteen years. Application of such rule mandates that we remand this case to the district court with instructions to remand the case to state court, because there was no notice of removal filed within thirty days of the date the International was served.

### III

### A

The courts following the Last-Served Defendant Rule have put forth numerous rationales supporting their adoption of the

rule. None of them survives close scrutiny. First, the court in *Bailey* observed "that the trend in recent case law" favored the Last-Served Defendant Rule. 536 F.3d at 1205. However, a recent interpretation of § 1446(b) that is inconsistent with the statute's plain language and results in a broad construction of the statute simply cannot be endorsed, for obvious reasons.

Second, the courts in *Bailey* and *Marano* pointed to inequities that flow from the First-Served Defendant Rule and the *McKinney* Intermediate Rule, in particular, that the Last-Served Defendant Rule is necessary to allow later-served defendants an opportunity to persuade earlier-served defendants to join a notice of removal. *Bailey*, 536 F.3d at 1206-07; *Marano*, 254 F.3d at 755; *see also Brierly*, 184 F.3d at 533 (noting that "as a matter of fairness to later-served defendants," it endorsed the Last-Served Defendant Rule). However, it is difficult to believe that Congress intended to protect this power of persuasion when it enacted § 1446(b). In fact, this power of persuasion rationale creates such an inequity of its own that it is surprising that the *Bailey* and *Marano* courts relied upon it at all. The power of persuasion rationale necessarily treats multiple defendants and single defendants differently. A single defendant who deliberately chooses not to remove a case cannot change his mind after the thirty-day window closes. However, if that single defendant is the first-served in a multiple-defendant case, that defendant gets another bite at the apple simply because he is part of a multiple-defendant case. There simply is no language in § 1446(b) that can be construed to suggest that Congress intended to treat single defendants and multiple-defendants differently in determining the timeliness of removal. Similarly, there is no language in § 1446(b) suggesting that Congress intended to treat multiple defendants served on the same day differently than multiple defendants served on different days.

Equally flawed is the notion that the *McKinney* Intermediate Rule is inequitable to later-served defendants because,

"through no fault of their own, [the later-served defendants] might . . . lose their statutory right to seek removal." *Bailey*, 536 F.3d at 1206. This inequity is illusory, because it assumes that later-served defendants can insist that a case be removed to federal court. However, if the first-served defendant (or any other defendant) opposes removal, the case cannot be removed "through no fault" of the later-served defendants.

Third, the courts in *Bailey* and *Brierly* implied that the term "the defendant" in § 1446(b) is naturally read to be "each defendant," and this natural reading means that "each defendant" has thirty-days to file a notice of removal. *Bailey*, 536 F.3d at 1207; *Brierly*, 184 F.3d at 533. This statutory slight-of-hand allowed the *Bailey* and *Brierly* courts to get around the obvious import of their interpretation of § 1446(b)—that it inserts the term "last-served" between "the" and "defendant." But this removal of the definite article "the" does nothing to help the *Bailey* and *Brierly* courts' cause, because the statute read as such requires each defendant to file a timely notice of removal. *See* 28 U.S.C. § 1446(b) ("The notice of removal . . . shall be filed within thirty days . . . ."). Under the interpretation of the *Bailey* and *Brierly* courts, each defendant is not filing a timely notice of removal, only the last-served defendant is so filing. Moreover, under this interpretation, each defendant is not acting within § 1446(b)'s thirty days of service requirement. In any event, even with the insertion of the word "each," if the first-served defendant fails to file a timely notice of removal, then the rule of unanimity through the decision of the first-served defendant—not § 1446(b)—operates to defeat removal. In effect, the *Bailey* and *Brierly* courts change the word "shall" in § 1446(b) to "may." For obvious reasons, we are constrained to reject such a drastic change to the statute.

Fourth, the *Bailey* court observed that the Last-Served Defendant Rule is consistent with the rule of unanimity because it allows earlier-served defendants to join a later-served defendant's notice of removal. *Bailey*, 536 F.3d at

1207. This observation is really beside the point. All three of the rules before the court are consistent with the rule of unanimity, because each of them requires all of the defendants at some point in time to unanimously agree to removal.

The more salient question concerns when the forum selection decision must be made. The Last-Served Defendant Rule represents the *broadest* interpretation of § 1446(b), resulting in the possibility that the forum selection question may not be resolved for quite some time, especially if discovery reveals that additional defendants should be named or if some defendants are difficult to serve. *Cf. Brown*, 792 F.2d at 481-82 (holding that removal was not warranted where later-served defendants were added to a four-year old state court action because no notice of removal was filed within thirty days of service on the first-served defendant). One could envision other scenarios that reduce the Last-Served Defendant Rule to a tool to forum-shop. Put simply, embracing the broadest interpretation of § 1446(b) simply is inconsistent with the principle that we must narrowly construe removal statutes. *Shamrock Oil*, 313 U.S. at 108-09. Such principle necessarily means that we penalize plaintiffs, as well as defendants, that sit on or waive their removal rights. *Cf. Buchner v. F.D.I.C.*, 981 F.2d 816, 818 (5th Cir. 1993) ("Unquestionably, a party may implicitly waive its right to remove a case by failing timely to file a notice of removal. Likewise, a party may implicitly waive its right to contest the removal of a case on procedural grounds by failing timely to move for remand.") (footnotes omitted); *DeLia v. Verizon Commc'ns, Inc.*, 258 F.R.D. 189, 190 n.2 (D. Mass. 2009) (denying Federal Rule of Civil Procedure 56(f) motion in removed case alleging constructive discharge; noting that not all defendants consented to removal, but that the plaintiff, by failing to raise it within thirty days of the removal, waived the defect). Holding otherwise essentially engrafts an "interest of justice" standard into § 1446(b), allowing a court to relax the timeliness requirements of § 1446(b) when the interests of justice so require. Obviously, no such standard exists in the statute. Put simply,

removal statutes must be construed narrowly, *Shamrock Oil*, 313 U.S. at 108-09, and any doubt about the propriety of removal should be resolved in favor of remanding the case to state court, *Dixon*, 369 F.3d at 816. Instead of construing the statute to encourage defendants to act in timely compliance with § 1446(b), the courts embracing the Last-Served Defendant Rule have done just the opposite. And to the extent there is doubt about the propriety of removal, such doubt must not be resolved in favor of an interpretation of § 1446(b) that requires only one defendant, among many defendants, to comply with the statute.

Fifth, the *Bailey* and *Marano* courts relied on the Supreme Court's decision in *Murphy Brothers*. *Bailey*, 536 F.3d at 1207-09; *Marano*, 254 F.3d at 756-57. However, it must be emphasized that *Murphy Brothers* did not involve multiple defendants. It involved a single defendant, and the issue to be decided was which service event triggered the running of the thirty-day window. 526 U.S. at 347. The plaintiff argued that the January 29, 1996 service of a faxed courtesy copy of the complaint triggered the running of the thirty-day window; the defendant countered that February 12, 1996, the date of formal service in accordance with local law, triggered the running of the thirty-day window. *Id.* at 348. The Court held that a defendant's time to remove "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* The Court did not address, or even mention, the First-Served Defendant Rule, the *McKinney* Intermediate Rule, or the Last-Served Defendant Rule, or, for that matter, consider how to calculate the period for removal in a case involving multiple defendants served at different times. Indeed, *Murphy Brothers* was based on the principle that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal

process." *Id.* at 347. That principle is neither threatened nor implicated in this case.

The *Marano* and *Bailey* courts also seemed concerned that the First-Served Defendant Rule and/or the *McKinney* Intermediate Rule required or obligated later-served defendants to engage in litigation prior to service, thus running afoul of *Murphy Brothers*, because the First-Served Defendant Rule and/or the *McKinney* Intermediate Rule obligated the later-served defendants to seek removal prior to their receipt of formal process. *Bailey*, 536 F.3d at 1208; *Marano*, 254 F.3d at 756. This reliance on *Murphy Brothers* rests on a faulty premise—that the first-served defendant will always consent to the removal. Without the filing of a notice of removal within the initial thirty-day window, participation by later-served defendants at that juncture of the litigation is inconsequential, as a result of the rule of unanimity, a rule that understandably was not implicated in *Murphy Brothers*.

### B

In its brief, the UAW argues that the Last-Served Defendant Rule is necessary to prevent unscrupulous plaintiffs' attorneys from manipulating the service of process system in order to defeat removal. Obviously missing from this argument is any empirical evidence even remotely suggesting that such manipulation has occurred or is currently occurring in the state and federal courts. In fact, the only empirical evidence before the court here are the facts of this case, which do not favor the UAW. Indeed, the International, Local 1183, and Local 1212 were all represented by the same attorneys and the most sophisticated of the three defendants, the International, was served first and deliberately chose not to remove the case.

### IV

The separate opinion of our good colleague concurring in the judgment embraces the Last-Served Defendant Rule for

essentially the same reasons espoused by the Sixth, Eighth, and Eleventh Circuits. However, like the analysis in the cases from our sister circuits, we find the analysis of the separate opinion wanting. First, the separate opinion seems more concerned with what § 1446(b) does not say rather than what it does say. *Post* at 39-40. Quite clearly, § 1446(b) requires a single defendant to file a notice of removal. If a single defendant does not file a notice of removal, the case cannot be removed. The question before us, then, is whether, under the language of § 1446(b), removal can be achieved by that single defendant where he or she is part of a larger, multiple-defendant case and some later-served defendant (served outside the single defendant's thirty-day window) convinces the single defendant (and all other defendants) that removal is appropriate. The language of § 1446(b) simply does not allow for removal under such circumstances, because such language neither is permissive in nature, nor does it seek to protect the right of persuasion for later-served defendants.

Second, and along a similar vein, the separate opinion goes on at length about how its interpretation of § 1446(b) adheres to the statute's plain language and does not add words to the statute. But the separate opinion's interpretation of § 1446(b) does just that—it adds the word "each" to the statute. Also, the separate opinion never recognizes the consequences of its textual change, that is, that such interpretation changes "shall" to "may" in § 1446(b). Moreover, the separate opinion's interpretation of § 1446(b) is premised on the assumption that each defendant in a multiple-defendant case enjoys a procedural right to remove a case. Such assumption is incorrect. Rather, each defendant does not enjoy a procedural right to remove a case, because such right is conditioned on each and every defendant joining the notice of removal. In other words, any defendant can defeat removal. Thus, at the end of the day, the separate opinion's interpretation of § 1446(b) seeks to protect a right that does not exist in the language of the statute, that is, the right of the last-served defendant to persuade the earlier-served defendants that removal is appropriate. Put

another way, the majority's gripe is not necessarily with the language of § 1446(b), but rather with the perceived unfairness in the rule of unanimity, which allows one defendant to thwart the wishes of his or her fellow defendants.

Third, the separate opinion stresses that its construction of § 1446(b) is in line with the principle that we strictly construe removal statutes. *Post* at 41. Of course, such stress is premised on the same erroneous assumption described above—that each defendant in a multiple-defendant case enjoys a procedural right to remove a case. In any event, the separate opinion's reliance on the principle of strict construction suffers from another flaw. The strict construction principle is designed to protect the interests of the state, as removal manifestly deprives a state from preserving the right of one of its citizens to proceed in state court. It follows, then, that strict construction requires us to limit the circumstances in which removal can be obtained, not expand them. Yet, this is exactly what the separate opinion seeks to achieve. Rather than limiting the time in which the rights of the parties are fixed, thus preserving state interests, the separate opinion seeks to broaden the time. Rather than requiring the first-served defendant to decide if he or she should proceed in state or federal court, the separate opinion would allow such defendant another bite at the apple. The list could go on, but suffice-it-to-say the separate opinion pays only lip service to the time-honored principle of strict construction. And it of course is silent on the principle that any doubts concerning the propriety of removal should be resolved *against* removal.

Fourth, the separate opinion also observes that its embracement of the Last-Served Defendant Rule is "strengthened" by the Supreme Court's decision in *Murphy Brothers*. In doing so, the separate opinion recognizes that *Murphy Brothers* is not directly on point. *Post* at 45, 46. The separate opinion essentially adopts the reasoning of the *Marano* and *Bailey* courts, so no extended discussion is necessary. Succinctly put, *Murphy Brothers* did not involve multiple defendants and any

reliance here on *Murphy Brothers* rests on the faulty assumptions that each defendant enjoys a procedural right to remove a case and that each defendant will always consent to removal.

Finally, the separate opinion relies on a perceived inequity in the *McKinney* Intermediate Rule, namely, that the *McKinney* Intermediate Rule prevents the last-served defendant from persuading earlier-served defendants to join a notice of removal. *Post* at 48-49. In Part III, we have adequately addressed this perceived inequity. Suffice-it-to-say that: (1) there is no language in § 1446(b) to suggest that Congress intended to protect this power of persuasion when it enacted § 1446(b); (2) this perceived inequity relies on the same faulty assumption mentioned above; and (3) the power of persuasion rationale is manifestly unfair, in the sense that it treats multiple defendants and single defendants differently.

V

In summary, Chief Judge Ervin writing for the *McKinney* court got it right back in February 1992. The *McKinney* Intermediate Rule adheres to the plain language of § 1446(b), but, more importantly, recognizes that federal courts are courts of limited jurisdiction, that we should construe removal statutes narrowly, and that any doubts should be resolved in favor of state court jurisdiction. Accordingly, we vacate the district court's decision holding that the joint notice of removal was timely filed and remand the case to the district court with instructions to remand the case to state court.

Given that removal was not proper, we must refrain from addressing the Retirees' other arguments, namely, that their claims are not preempted by federal labor law and that their claims are not barred by the six-month statute of limitation contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and

longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) ("The Court will not anticipate a question of constitutional law in advance of the necessity of deciding it. . . . It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case") (citations and internal quotation marks omitted); *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir.) ("We have held that federal preemption of state law is a constitutional question because it is premised on the Supremacy Clause of the United States Constitution, and when a party provides alternative independent state law grounds for disposing of a case, courts should not decide the constitutional question of preemption before considering the state law grounds."), *cert. denied*, 2010 WL 3644597 (U.S. November 29, 2010); *Bell Atl. Md., Inc. v. Prince George's County*, 212 F.3d 863, 865 (4th Cir. 2000) (discussing constitutional nature of preemption analysis); *see also H & R Block E. Enter., Inc. v. Raskin*, 591 F.3d 718, 723-24 (4th Cir. 2010) (applying *Bell Atlantic* to remand the case for consideration of whether the statute applied to the plaintiff before deciding whether it was preempted).[5]

*VACATED AND REMANDED*

AGEE, Circuit Judge, concurring in the judgment:

While I concur in the judgment of the Court, I respectfully disagree with the basis upon which the majority opinion rests that judgment. As explained below, I believe the last-served defendant rule represents the more accurate and appropriate

---

[5]In its review of the district court's judgment, the separate opinion addresses the preemption issue raised by UAW. We emphasize that this preemption discussion is *not* binding on remand to the Circuit Court for Cecil County, Maryland.

reading of the terms of 28 U.S.C. § 1446(b).[1] Therefore, I do not join the majority's adoption of the *McKinney* rule and would hold that the UAW's notice of removal was timely. Nonetheless, because I do not find that complete preemption applies to the Retirees' claims, I would remand the case to the state court because the district court lacked subject matter jurisdiction. Accordingly, I concur only in the Court's judgment remanding this case to the Maryland state court.

## I.

The threshold issue to consider is whether the notice of removal was timely. *See Fakouri v. Pizza Hut of Am., Inc.*, 824 F.2d 470, 472 (6th Cir. 1987) ("'In reviewing a denial of a motion to remand a removed case, we look to whether the case was properly removed to federal court in the first place.'" (quoting *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985))); *see also Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 456-57 (6th Cir. 1996) (recognizing that "[w]ithout proper removal, a state-court action does not belong in federal court in the first place," finding removal was improper, and declining to "express [an] opinion on the merits"). If the notice was untimely, we need not consider the UAW's claim of complete preemption, as an invalid notice of removal would require a remand to the Maryland state court. On the other hand, if the UAW's notice of removal was timely, we must then consider whether the district court possessed subject matter jurisdiction over the Retirees' claims through complete preemption.

28 U.S.C. § 1446(b) provides:

---

[1]For the reasons explained herein, the "last-served defendant rule" is somewhat of a misnomer. A more accurate description of that rule would be the "each-served defendant rule." Nonetheless, because the term "last-served defendant rule" is used by the majority and our sister circuits, as well as various treatises and commentators, I adhere to its usage for purposes of this opinion concurring in the judgment.

> *The notice of removal* of a civil action or proceeding shall be filed within thirty days after the receipt by *the defendant*, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . . .

(emphasis added.) As is self-evident, the statute speaks only in terms of a singular defendant and does not explicitly address the timeliness of removal in cases involving multiple defendants, as in the case at bar. "All pertinent sections of the removal statute contemplate cases with more than one defendant, except for § 1446(b). This conspicuous omission has created the most serious statutory construction problem when removal is sought in multidefendant actions." Howard B. Stravitz, *Recocking the Removal Trigger*, 53 S.C. L. Rev. 185, 200 (2002) (footnote omitted).

Application of § 1446(b) thus poses a conundrum when multiple defendants are served at different times, particularly when some named defendants have received no service of process. Why Congress drafted the statute as it did is anyone's guess, but notwithstanding any Congressional imprecision, courts adjudicating an issue of timely removal must endeavor to apply a statutory framework which most closely matches Congress' intent. *See United States v. Passaro*, 577 F.3d 207, 213 (4th Cir. 2009) ("When interpreting any statute, we must first and foremost strive to implement congressional intent by examining the plain language of the statute."). As the majority notes, in divining that intent, the courts of appeals have set forth three distinct interpretations of § 1446(b)'s application to multiple defendants: (1) the "first-served defendant rule," (2) the "*McKinney* rule," and (3) the "last-served defendant rule." Before examining which rule most closely follows Congress' intent in enacting § 1446(b),

a brief overview illustrating the principles of each rule and how it would apply to the case at bar may be useful.

## A.   Overview

### 1.   First-Served Defendant Rule

In *Brown v. Demco, Inc.*, 792 F.2d 478 (5th Cir. 1986), the Fifth Circuit observed that "[t]he general rule . . . is that '[i]f the first served defendant abstains from seeking removal or does not effect a timely removal, subsequently served defendants cannot remove . . . due to the rule of unanimity among defendants which is required for removal.'" 792 F.2d at 481 (quoting 1A Moore's Federal Practice, ¶ 0.168 [3.5-5], 586-87 (2d ed. 1985)). Two years later, in *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254 (5th Cir. 1988), the Fifth Circuit expressly adopted what has become known as the "first-served defendant" rule:

> In cases involving multiple defendants, the thirty-day period begins to run as soon as the first defendant is served (provided the case is then removable). It follows that since all served defendants must join in the petition, and since the petition must be submitted within thirty days of service on the first defendant, all served defendants must join in the petition no later than thirty days from the day on which the first defendant was served.

841 F.2d at 1262-63 (internal citations omitted).

Under the first-served defendant rule, the first-served defendant must file the notice of removal within thirty days of the receipt of service of process. If the first-served defendant fails to do so, no removal is permitted by any other defendant, regardless of when or if other defendants were served by the end of the initial defendant's thirty-day period. Removal in the case at bar was untimely under this rule, as

the first-served defendant, *i.e.*, the International Union, failed to file a timely notice of removal. The first-served defendant rule thus forecloses removal not only for the International Union, but all other defendants as well, including Local 1212, which never received service of process. Only the Fifth Circuit has adopted the first-served defendant rule.

## 2. *McKinney* Rule[2]

Six years after the Fifth Circuit adopted the first-served defendant rule in *Getty Oil*, this Court tendered its opinion in *McKinney v. Board of Trustees*, 955 F.2d 924 (4th Cir. 1992), which considered a § 1446(b) removal issue on similar facts to those in *Getty Oil*. The *McKinney* opinion observed that later-served defendants could join an existing removal notice within thirty days of service upon them, provided the first-served defendant had timely filed a notice of removal.[3] *See id.* at 928.

The *McKinney* rule gives each defendant thirty days from that defendant's date of service of process to join a removal petition, so long as the first-served defendant filed the notice of removal within thirty days of its service. Under the facts of

---

[2]The "*McKinney* rule" is derived from footnote three in *McKinney v. Board of Trustees of Maryland Community College*, 955 F.2d 924 (4th Cir. 1992), as more fully discussed in the majority opinion.

[3]Although the district courts in this Circuit have considered the *McKinney* rule to be dicta, some have followed it while others have not. *Compare Ratliff v. Workman*, 274 F. Supp. 2d 783, 787 (S.D. W. Va. 2003) (noting that the facts of *McKinney* "did not require the court to resolve . . . whether an individual defendant may remove a case within thirty days of service even when a previously served defendant has failed to remove in a timely manner" and explaining that footnote three "is therefore considered dictum"), *with Superior Painting & Contracting Co. v. Walton Tech., Inc.*, 207 F. Supp. 2d 391, 393 n.4 (D. Md. 2002) (noting that although the *McKinney* Court's "pronouncements on when first-served defendants must file notices of removal has been termed dicta," "dictum from the court of appeals should be considered presumptively correct by the district court[s] within that circuit" (quotation omitted)).

the present case, removal was untimely because the International Union, the first-served defendant, did not file a notice of removal within thirty days of being served. The *McKinney* rule requires this result notwithstanding the fact that Local 1183 filed a notice of removal within thirty days of its receipt of process and Local 1212 was never served. No other circuit has adopted the rule described in *McKinney*.

3.  Last-Served Defendant Rule

Since *Getty Oil* and *McKinney* were decided, three other courts of appeals have addressed § 1446(b) in the context of multiple defendants. Each has adopted the last-served defendant rule. *See Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1209 (11th Cir. 2008); *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999). This rule "permits each defendant, upon formal service of process, thirty days to file a notice of removal pursuant to § 1446(b)." *Bailey*, 536 F.3d at 1209. "Earlier-served defendants may choose to join in a later-served defendant's motion or not, therefore preserving the rule that a notice of removal must have the unanimous consent of the defendants." *Id.* at 1207. In adopting the last-served defendant rule, the courts of appeals in *Bailey* and *Marano* relied heavily on the Supreme Court's decision in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), which came seven years after our decision in *McKinney*.

The last-served defendant rule gives each defendant thirty days from its date of service of process to initiate removal by filing a notice of removal. While all earlier-served defendants must join in the removal, later-served defendants are not foreclosed from initiating removal because earlier-served defendants did not. Under the last-served defendant rule, the notice of removal in this case was timely because all defendants joined in the removal petition Local 1183 filed within thirty days of its service. This is true notwithstanding the fact that

an earlier-served defendant, the International Union, failed to file a notice of removal within thirty days of its service of process.

## B.    Determining Which Rule to Apply

Our task is to determine which rule most closely approximates the intent of Congress in cases involving multiple defendants. As evidenced by the differing viewpoints of the courts of appeals, as well as the divergence of opinion among respected treatises on federal practice, logical arguments can be made for each interpretation of § 1446(b).[4]

To select the rule most in line with congressional intent, we look first and foremost to the wording of the statute. *See U.S. Army Engineer Ctr. v. FLRA*, 762 F.2d 409, 413 (4th Cir. 1985) ("Our duty is to give effect to the intent of Congress, which we must first seek in the plain language of the statute, giving the words their ordinary meaning" (internal quotations and citations omitted)). The majority opinion correctly states that there is "no reason to depart from applying the plain language of § 1446(b)." Majority Opinion at 20-21. However, I must respectfully disagree that the majority identifies "plain language" in the statute capable of supporting its adoption of

---

[4]As the Sixth Circuit noted in *Brierly*, Wright & Miller supported the last-served defendant rule, while Moore's Federal Practice formerly advanced the first-served defendant rule. *See* 184 F.3d at 532 n.2. The most recent edition of Moore's Federal Practice, however, recognizes that in light of the Supreme Court's decision in *Murphy Brothers* "it is likely that the Court will decide that the removal right of later-served defendants may not be compromised before they are served and that they ought to have the opportunity to persuade the earlier-served defendants to join the removal notice." 16 Moore's Federal Practice § 107.30[3][a][iv][C] (3d ed. 2010). In other words, "the [Supreme] Court has elevated the importance of proper service in the removal context. In doing so, it has implicitly rejected the policies that the removal statute be strictly construed and that the choice of forum be settled as soon as possible." *Id.* Moore's now concludes that *Murphy Brothers* "will likely determine the result of this debate in favor of the later-served defendant rule." *Id.*

the *McKinney* rule. As seems obvious from the text of the statute, § 1446(b) does not squarely address the issue presented for decision here. *See Murphy Bros.*, 526 U.S. at 354 ("[I]f in fact the [statute] had a plain meaning, the cases would not be so hopelessly split over [its] proper interpretation." (quotation omitted)).

Section 1446(b) requires "*[t]he notice of removal* of a civil action or proceeding . . . be filed *within thirty days*" of "*the defendant['s]*" receipt of the "initial pleading," or "within thirty days after the service of summons." 28 U.S.C. § 1446(b) (emphasis added). However, what the statute does *not* say is equally important. Section 1446(b) does not speak to multiple defendants, nor does it reference joinder. Consequently, the statute does not directly address the issues presented here, *i.e.*, the timeliness of removal and joinder in actions involving multiple defendants. We are thus necessarily left to draw implications from § 1446(b)'s text.

That text is singular in nature and uses the definite article to reference "the defendant" and "[t]he notice of removal." In cases involving multiple defendants, I submit "the defendant" must be read in its ordinary context to apply to each defendant. If Congress had intended "the defendant" to exclude all defendants after the first-served defendant, it could easily and clearly have said so. Congress did not. Consequently, to give meaning to the language Congress used, "the defendant" should be taken to mean what it would in the ordinary course. *See Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1133 (4th Cir. 1996) ("Absent explicit legislative intent to the contrary, the statute should be construed according to its plain and ordinary meaning."). That is, "the defendant" is each defendant, *i.e.*, the defendant being served, and each such defendant is given the statutory right to a prescribed thirty-day period in which to file "[t]he notice of removal" attributable to that defendant. *See Bailey*, 536 F.3d at 1207 ("[T]he statute, as written, could reasonably be read to permit each defendant a right to remove within thirty days of service on the individual

defendant . . . ."); *Brierly*, 184 F.3d at 533 ("If Congress had intended the 30-day removal period to commence upon service of the first defendant, it could have easily so provided."); *C.L.B. v. Frye*, 469 F. Supp. 2d 1115, 1119 (M.D. Fla. 2006) ("The most reasonable construction of this provision is that each defendant — not just the first-served — has thirty days in which to seek removal.").

Nothing in the language of § 1446(b) excludes *any* of "the defendant[s]" from a right to file a removal notice. If anything, giving effect to the ordinary meaning of the term "the defendant" requires application of the last-served defendant rule, as the other rules write out "the defendant['s]" right to file "[t]he notice of removal" unless that defendant is the first to be served. There is no plain language in the statute that says "the defendant" means only the first defendant, and thus the right of "the defendant" to file "[t]he notice of removal" is restricted to the first defendant served.

The construction given § 1446(b) in the majority opinion may reflect valid policy considerations for Congress to evaluate, but it is not rooted in the plain meaning of the statute. Section 1446(b) simply states that "the defendant" has a right to file "[t]he notice of removal" for a thirty-day period after service of process. Unless words are added to the statute, the natural construction of the terms of § 1446(b) is that the only requirement for filing "the notice of removal" is that "the defendant" file it within a given period after service.

As noted in *McKinney*, the first-served defendant rule requires § 1446(b) to be read with "first-served" inserted before "defendant." *See* 955 F.2d at 927; *see also Bailey*, 536 F.3d at 1207 ("[T]he first-served rule requires reading first-served defendant into the statute . . . ."); *Brierly*, 184 F.3d at 533 ("[A]s a matter of statutory construction, holding that the time for removal commences for all purposes upon service of the first defendant would require us to insert 'first' before 'defendant' into the language of the statute."); *C.L.B.*, 469 F.

Supp. 2d at 1119 ("If Congress had intended that the thirty-day removal period for all defendants to commence [sic] with service upon the first defendant, it could have made that intent clear. The courts that hold a later-served defendant is barred from removal if thirty days have passed since the first defendant was served can only reach that conclusion by reading the words 'first-served' into the statute. Those courts take unjustified liberty with the plain meaning of the text." (quotations and internal citations omitted)).

The *McKinney* rule and the majority's "action requirement," however, similarly require the statute to be read with "first-served" inserted before "defendant." *See Marano*, 254 F.3d at 755 n.4 (observing that the *McKinney* rule is "fully in keeping with the first-served rule: it still requires that the first-served defendant file a notice of removal within thirty days and precludes a later-served defendant from instigating removal if more than thirty days have passed since the first defendant was served"). Indeed, the majority effectively alters the statute to require not "the defendant" but "all earlier-served defendants" to file not "the notice of removal" but the functional equivalent of "notices of removal" within § 1446(b)'s thirty-day window. Otherwise, "the defendant" would be each defendant served, as service of process activates each of "the defendant['s]" statutory right to file "[t]he notice of removal."

In contrast, the last-served defendant rule gives effect to each defendant's statutory right as "the defendant" to file "[t]he notice of removal" and thus seems to most closely follow the interpretive principle that removal statutes must be strictly construed. "The canon of construction that a court should strive to [narrowly] interpret a [removal] statute . . . is useful in close cases, but it is 'not a license for the judiciary to rewrite language enacted by the legislature.'" *Chapman v. United States*, 500 U.S. 453, 463 (1991) (quoting *United States v. Monsanto*, 491 U.S. 600, 611 (1989)).

Simply put, the language of § 1446(b) cannot support the *McKinney* rule because that rule cannot operate without judicial additions to the statute's text not included by Congress. It is well established, however, that courts must construe statutes as written, not add words of their own choosing. *See United States v. Childress*, 104 F.3d 47, 53 (4th Cir. 1996), *superseded by statute as recognized in United States v. Kelly*, 510 F.3d 433, 441 n.8 (4th Cir. 2007) ("We must interpret statutes as written, not as we may wish for them to be written. Congress' role is to enact statutes; the judiciary's to interpret those statues as written."). By adding words to the statute, the majority opinion does not strictly construe § 1446(b).

> While we construe removal statutes narrowly, we do not rewrite them to add restrictions that cannot be found in their language and that would run counter to their purposes. *See Tenn. Valley Auth. v. Whitman*, 336 F.3d 1236, 1255 (11th Cir. 2003) ("[N]o canon of statutory interpretation can trump the unambiguous language of a statute."). As the Supreme Court long ago admonished, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (citation omitted).

What Congress has provided to "the defendant" in § 1446(b) is the right to file "[t]he notice of removal." The majority opinion misconstrues the statute in circumscribing that right by barring all defendants except the first-served from exercising it. *See* Majority Opinion at 20 ("If the first-served defendant decides not to remove, later-served defen-

dants are not deprived of any rights under § 1446(b), because § 1446(b) does not prevent them from removing the case; rather, it is the rule of unanimity that does."). In so doing, I submit the majority conflates the right Congress granted "the defendant" to file "[t]he notice of removal" with a defendant's right to join in a filed removal notice. But whether a defendant joins in the removal is a wholly different matter than whether a defendant initiates removal by filing the removal notice.

Contrary to the majority's apparent misapprehension, *filing* a notice of removal is not the same as *joining* in that removal.[5] Removal is controlled by § 1446(b)'s thirty-day requirement, but joinder is not. "[T]he defendant" who fails to file "[t]he notice of removal" within thirty days of service has lost that which the statute gave him — the right to file the removal notice. That right is gone forever. No matter what that tardy defendant may wish to do, it *cannot* file "[t]he notice of removal." However, the loss of that right, the only right extended by the plain terms of § 1446(b), has no effect on the defendant's right to join a notice of removal timely filed by another defendant.

The majority's statement that "the Last-Served Defendant Rule allows all of the defendants, except the last-served, to both ignore § 1446(b)'s . . . thirty-day action requirement and act in an untimely fashion," Majority Opinion at 22 n.4, is not accurate. Once "the defendant" lets its thirty-day period expire, its statutory right to file "[t]he notice of removal" ceases to exist. However, nothing in § 1446(b) forecloses that defendant's separate right to joinder. Section 1446(b)'s terms are quite specific; they address the timely filing of a notice of

---

[5]As the Ninth Circuit explained in *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1224-25 (9th Cir. 2009), the courts of appeals have established different requirements for joining a timely notice of removal. None of them, however, mandate that each defendant file its own removal notice.

removal, not timely joinder and certainly not timely "action" in some generic and undefined sense. In other words, the statute does not address the time period in which remaining defendants must join in the removal initiated when "the defendant" files "[t]he notice of removal."

Of course, for removal to take place, all defendants must give their assent to transferring the case to federal court. Congress was undoubtedly aware of this longstanding "rule of unanimity" when it drafted § 1446(b). *See Fletcher v. Hamlet*, 116 U.S. 408, 410 (1886) ("There can be no removal by the defendants unless they all join . . . ."). It is thus reasonable to conclude that Congress intended to give the defendants who did not file the removal notice time in which to join in the removal. *See Brierly*, 184 F.3d at 533 ("If Congress had intended the 30-day removal period to commence upon service of the first defendant, it could have easily so provided.").

It is the *McKinney* rule, not the rule of unanimity, which mandates that all earlier-served defendants file a timely notice of removal. The rule of unanimity simply requires that all defendants join in the removal at some point. Section 1446(b), however, is silent as to when that joinder must occur. More importantly, nothing in § 1446(b) merges a defendant's right to file a notice of removal with a right to joinder. Only by conflating the notice of removal with joinder can the majority validate the *McKinney* rule. Section 1446(b), however, does not strip an earlier-served defendant who failed to file a notice of removal of its separate right to joinder.

I am thus left to conclude that the majority's view that the plain language of § 1446(b) supports the *McKinney* rule is inaccurate. The majority can only arrive at that result by adding words to the statute and by conflating a defendant's right to file "[t]he notice of removal" with its right to join a timely removal notice. I submit the plain terms of § 1446(b) do not support either construct.

This conclusion takes on greater force in view of the Supreme Court's decision in *Murphy Brothers* and the reasoning of our sister circuits in addressing the issue presented in the case at bar. Unlike the *Getty Oil* and *McKinney* courts, we have the advantage of the Supreme Court's guidance in *Murphy Brothers*. Like the Eighth and Eleventh Circuits, I agree that *Murphy Brothers* lends credible and persuasive support to the last-served defendant rule as the more appropriate reading of § 1446(b).

The Supreme Court in *Murphy Brothers* was asked to determine "whether the named defendant must be officially summoned to appear in the action before the time to remove [under 28 U.S.C. § 1446(b)] begins to run." 526 U.S. at 347. In requiring that formal service occur before the commencement of the 30-day removal period, the Supreme Court reaffirmed the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.*

The facts of the case at bar illustrate the conflict between *Murphy Brothers* and the first-served defendant or *McKinney* rules. Here, the International Union was served on March 20, 2008 and Local 1183 was served nine days later on March 29, 2008. Despite the fact that Local 1212 was never served, it joined in the notice of removal filed on April 28, 2008 (39 days after service on the International Union and 30 days after service on Local 1183).

"Contrary to *Murphy Brothers*, the first-served defendant rule would [have] obligate[d] [Local 1212] to seek removal prior to [its] receipt of formal process bringing [it] under the court's jurisdiction." *Bailey*, 536 F.3d at 1208. Under either the first-served defendant rule or the *McKinney* rule, Local 1212's right to seek removal as "the defendant" would have been eliminated by the International Union's failure to file a notice of removal within 30 days of being served, even

though Local 1212 was not yet within the district court's jurisdiction. *But see Murphy Bros.*, 526 U.S. at 356 (refusing "to render removal the sole instance in which one's procedural rights slip away before service of a summons, *i.e.*, before one is subject to any court's authority"). Such prejudice to Local 1212 would violate the spirit, if not the letter, of the "bedrock principle" that "a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* at 347. This principle would apply as well to Local 1183, if the failure of another party, the International Union, were to be construed as waiving Local 1183's own right to seek removal under § 1446(b).

*Murphy Brothers* made clear that "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Id.* at 350. Despite the Supreme Court's admonition that "one becomes a party officially, and is required to take action in that capacity, *only* upon service of a summons," *id.* (emphasis added), the majority adheres to the *McKinney* rule. In practice, this position will require an unserved defendant, who may or may not be aware of the lawsuit, to urge a first-served defendant, of whom it may have no knowledge, to file the notice of removal. *But see id.* at 352 (recognizing that Congress modified § 1446(b) in 1949 to address its concern that the prior version of the statute could "place[] the defendant in the position of having to take steps to remove a suit to Federal court before he knows what the suit is about" (quotation omitted)). The Supreme Court's decision in *Murphy Brothers* does not counsel such a result.

As the Eighth Circuit explained in *Marano*, although not directly on point, "the legal landscape in this area has been clarified, and perhaps the definitive answer portended, by the Supreme Court's decision in *Murphy Bro[thers]*." 254 F.3d at 756. The Eighth Circuit concluded

that, if faced with the issue before us today, the [Supreme] Court would allow each defendant thirty days after receiving service within which to file a notice of removal, regardless of when — or if — previously served defendants had filed such notices. *See* 16 James Wm. Moore et al., Moore's Federal Practice § 107.30[3][a][i], at 107-163 (3d ed. 2000) ("[I]t is likely that the Court may decide that the later served defendants may not have their removal right compromised before they are served, and that they ought to have the opportunity to persuade the earlier served defendants to join the notice of removal. Thus, the fairness approach may well, and should, supercede [sic] the unanimity rule.").

*Id.* at 756–57 (footnote omitted); *see also Shadie v. Aventis Pasteur, Inc.*, 254 F. Supp. 2d 509, 515 (M.D. Pa. 2003) ("This 'later-served defendant' rule appears to be a necessary corollary to the Supreme Court's recent decision in *Murphy Brothers* . . . ."); *Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 343 (D.N.J. 2001) ("In light of the Supreme Court's holding in *Murphy Brothers* . . . , it is counter-intuitive to maintain a 'first-served defendant' rule when the Supreme Court would not — consistent with *Murphy Brothers* — begin to run a later-served defendant's time to seek removal until that defendant received proper service of process.")

Agreeing with the Eighth Circuit's reasoning, the Eleventh Circuit stated:

Perhaps prior to *Murphy Brothers* and its holding that notice is insufficient to trigger § 1446(b)'s time window, the issue of which rule to endorse would be a closer call than it is now. The tide of recent decisions by the courts of appeals . . . recognize that equity favors permitting each defendant thirty days in which to seek removal under the statute. As the

Eighth Circuit observed, the last-served defendant rule is consistent with *Murphy Brothers*, . . . [which] signals a slight departure from the weight courts might ordinarily put on strict construction of the removal statute. It appears to us to be contrary to the Supreme Court's holding in *Murphy Brothers*, as well as the interests of equity, to permit a first-served defendant to, in effect, bind later-served defendants to a state court forum when those defendants could have sought removal had they been more promptly served by the plaintiff.

*Bailey*, 536 F.3d at 1208 (footnote omitted).

In *McKinney*, we observed that equity did not favor the first-served defendant rule and stated that "a better term for what the *Getty Oil* rule could lead to is 'inequity.'" 955 F.2d at 927. For all intents and purposes, this criticism of the first-served defendant rule also applies to the *McKinney* rule. Both rules foreclose removal for all later-served defendants if the first or earlier-served defendants fail to act, even if the later-served defendants have not received service of process. The Sixth, Eighth, and Eleventh Circuits each discussed this factor in adopting the last-served defendant rule. *See Bailey*, 536 F.3d at 1206 ("[W]e are convinced that both common sense and considerations of equity favor the last-served defendant rule."); *Marano*, 254 F.3d at 755 ("The [Fifth Circuit in *Getty Oil*] did not consider . . . the 'hardships' to a defendant when the first-served defendant for whatever reason does not file a notice of removal within thirty days of service.") (emphasis omitted); *Brierly*, 184 F.3d at 533 ("[A]s a matter of fairness to later-served defendants, we hold that a later-served defendant has 30 days from the date of service to remove a case to federal district court, with the consent of the remaining defendants." (footnote omitted)).

One commentator has explained the inequity thrust upon later-served defendants as follows:

> [N]either § 1446(a) nor § 1446(b) contemplates a scenario in which defendants are served as much as thirty days apart, or in which an unsophisticated defendant is served first and a more sophisticated defendant is served later. In these instances, the second-served defendant should be able to timely remove and persuade the first-served defendant to join the removal. Otherwise, the first-served defendant abridges the second-served defendant's procedural right to a federal forum. If the first-served defendant makes a conscious choice not to remove, the second-served defendant has to accept that choice. But the second-served defendant should have a reasonable opportunity to consult with the first-served defendant regarding possible removal. Consultation is practically impossible if service on the second defendant occurs near the end of or after the first defendant's thirty-day removal period has expired.

Stravitz, *supra*, at 202-203.

While these equitable considerations are a valid policy reason for Congress to choose the last-served defendant rule as the best way to implement the purpose of § 1446(b), I am constrained to reject the majority's adoption of the *McKinney* rule for the textual reasons set forth above. The plain language of § 1446(b) simply does not support construing "the defendant['s]" statutory right of removal in keeping with either the first-served or *McKinney* rules. Only by adding words so that "the defendant['s]" right to file "[t]he notice of removal" is limited to the "first" defendant served can either the first-served or *McKinney* rules be found to fit the statute. This is beyond our power as a court to do. *See, e.g.*, *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951) ("[O]ur problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain — neither to add

nor to subtract, neither to delete nor to distort."); *McLean v. United States*, 566 F.3d 391, 407 (4th Cir. 2009) ("[W]e simply are not at liberty to add . . . limiting words to the statute.") (Shedd, J., concurring in part and dissenting in part).

By contrast, an ordinary reading of § 1446(b)'s references to "the defendant" being entitled to file "[t]he notice of removal" is that each such defendant in a multi-defendant case has that right. The last-served defendant rule seems the truest to the text of § 1446(b) in upholding that procedural right and thus following the strict construction principle. The aptness of the last-served defendant rule is further strengthened by the Supreme Court's decision in *Murphy Brothers*, which preserved a defendant's removal rights until that defendant is brought within the court's jurisdiction by service of process. Under the *McKinney* rule, an unserved defendant like Local 1212 is not accorded the right *Murphy Brothers* appears to give a defendant not to be dispossessed of the removal privilege before becoming a party to the case.

For all of these reasons, I would join the Sixth, Eighth, and Eleventh Circuits and adopt the last-served defendant rule. Accordingly, I would find the joint notice of removal by the UAW was timely filed and would affirm that part of the district court's judgment denying the Retirees' motion to remand under § 1446(b).

## II.   Complete Preemption

Having determined that the notice of removal was timely filed, I next consider whether the district court correctly concluded that the Retirees' claims were cognizable only in federal court.

### A.   Overview

#### 1.   Procedural History

Once this case was removed to federal court, the UAW filed a motion to dismiss under Rule 12(b)(6) based on the

assertion that the Retirees' claims were barred by the applicable statute of limitations under federal labor law. *See* 29 U.S.C. § 160(b). The Retirees responded by filing a motion to remand the case to state court, arguing, *inter alia*, that there was no basis for federal jurisdiction. The district court ultimately held that the Retirees had "artfully" attempted to "'plead around' the pre-emptive force of federal labor law" and that their claims were "completely pre-empted by the federal duty of fair representation," which is derived from section 9(a) of the NLRA. *Id.* at 127. Accordingly, the district court granted the UAW's motion to dismiss based on the federal statute of limitations.

## 2. Federal Subject Matter Jurisdiction

Removal to federal court of a proceeding filed in state court usually occurs in one of three circumstances: (1) "if the parties are diverse and meet the statutory requirements for diversity jurisdiction" as set forth in 28 U.S.C. §§ 1332, 1441(b); (2) "if the face of the complaint raises a federal question;" or (3) "if the subject matter of a putative state law claim has been totally subsumed by federal law — such that state law cannot even treat on the subject matter." *Lontz v. Tharp*, 413 F.3d 435, 439-40 (4th Cir. 2005). The UAW has never contended that removal could be founded upon diversity jurisdiction or that a federal claim is presented on the face of the Retirees' complaint. Therefore, we need only consider whether the doctrine of complete preemption provides a basis for subject matter jurisdiction in federal court.

If the district court correctly concluded that complete preemption applies, then subject matter jurisdiction exists as to this case. But if the district court erred in that regard, it lacked subject matter jurisdiction and had no authority to rule on the UAW's Rule 12(b)(6) motion. Consistent with the stricture that complete preemption must be narrowly construed, I conclude that the Retirees' claims are not completely preempted

by federal law and consequently that the district court lacked subject matter jurisdiction to decide this case.

> We review questions of subject matter jurisdiction de novo, "including those relating to the propriety of removal." *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). The burden of demonstrating jurisdiction resides with "the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). We are obliged to construe removal jurisdiction strictly because of the "significant federalism concerns" implicated. *Id.* Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Id.*

*Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815–16 (4th Cir. 2004) (en banc).

"Under what has become known as the well-pleaded complaint rule, § 1331 federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law . . . ." *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."). "The doctrine of complete preemption provides a corollary to the well-pleaded complaint rule. This doctrine recognizes that some federal laws evince such a strong federal interest that, when they apply to the facts underpinning the plaintiff's state-law claim, they convert that claim into one arising under federal law." *In re Blackwater*, 460 F.3d at 584. Our decision in *Lontz*, which states the applicable principles clearly and concisely, provides a roadmap for determining the issue of complete preemption.

We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Mulcahey*, 29 F.3d at 151). "Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction." *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996) (internal quotes omitted). Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. *See, e.g.*, *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004); *King*, 337 F.3d at 424; *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186 (4th Cir. 2002); *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985). The presumption, in other words, is against finding complete preemption. *Custer*, 89 F.3d at 1167.

But that presumption is rebuttable, because federal law occasionally "displace[s] entirely any state cause of action." *Franchise Tax Board*, 463 U.S. at 23. When it does, federal law then "provide[s] the exclusive cause of action for such claims," and therefore "there is . . . no such thing as a state-law claim" in the regulated area. *Beneficial*, 539 U.S. at 11. The doctrine of complete preemption thus prevents plaintiffs from "defeat[ing] removal by omitting to plead necessary federal questions." *Franchise Tax Board*, 463 U.S. at 22. It thereby ensures compliance with congressional intent that federal courts be available to resolve certain claims which are peculiarly national in scope. Defendants' burden, then, is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter.

*Lontz*, 413 F.3d at 440–41 (alterations in original).

B.   Complete Preemption is Both Disfavored and Rare

When considering whether Congress intended for a putative state law claim to be totally subsumed by federal law, "we begin with the presumption that state courts enjoy concurrent jurisdiction." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981). The UAW thus bears the heavy burden of proving that § 9(a) of the NLRA "indisputably displaces" the claims set forth in the Retirees' complaint, stripping state courts of jurisdiction over the claims. *Lontz*, 415 F.3d at 440. "The presumption . . . is against finding complete preemption." *Id.* (citing *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996)). That presumption, however, is rebuttable. Occasionally, federal law "displace[s] entirely any state cause of action." *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)). The UAW's burden, then, "is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter." *Lontz*, 413 F.3d at 440.

In my view, this case turns on the critical distinction between ordinary and complete preemption. *Lontz* provides helpful guidance for distinguishing between these two concepts:

> In assessing whether defendants have carried their burden, we may not conflate "complete preemption" with "conflict" or "ordinary" preemption. While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim. *Sonoco Prods.*, 338 F.3d at 370-71. Ordinary preemption has been categorized as a federal "defense to the allegations." *Caterpillar*, 482

U.S. at 392. And as a mere defense, the "preemptive effect of a federal statute . . . will not provide a basis for removal." *Beneficial*, 539 U.S. at 6 (internal citations omitted). *See also Rivet*, 522 U.S. at 475-76; *Caterpillar*, 482 U.S. at 392-93; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) ("even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction"); *Franchise Tax Board*, 463 U.S. at 14. Even if preemption forms the very core of the litigation, it is insufficient for removal. *Caterpillar*, 482 U.S. at 393.

*Lontz*, 413 F.3d at 440–41 (alterations in original).

Ordinary preemption is thus merely a defense, which "declares the primacy of federal law, regardless of the forum or the claim." *Id.* (citing *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370-71 (4th Cir. 2003)). It does not "'provide a basis for removal.'" *Id.* (quoting *Beneficial*, 539 U.S. at 6); *see also In re Blackwater*, 460 F.3d at 584 ("[A]ctions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question.") (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

In contrast, complete preemption necessitates removal because it means "there is 'no such thing' as the state action." *Lontz*, 413 F.3d at 441 (quoting *Beneficial*, 539 U.S. at 11). For complete preemption to apply, it is insufficient for a defendant to show the plaintiff's state law claim could have been made as a federal law claim. Otherwise, the well-pleaded complaint rule, which recognizes the plaintiff as the master of his claim, would be turned on its head and removal jurisdiction would expand exponentially. *See Caterpillar Inc.*, 482 U.S. at 392 (1987) (recognizing the well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law"); *see also Lontz*, 413 F.3d at 441 (citing *Metro. Life*

*Ins. v. Taylor*, 481 U.S. 58, 65 (1987)) (recognizing that complete preemption "undermines the plaintiff's traditional ability to plead under the law of his choosing," providing another reason for courts to be "reluctant" to find complete preemption). Instead, a removing defendant must show not only that the defendant's state law claim is cognizable as a federal claim, but also that Congress clearly intended the federal claim to "'provide *the exclusive* cause of action' for claims of overwhelming national interest." *Lontz*, 413 F.3d at 441 (quoting *Beneficial*, 539 U.S. at 11).

Thus, for good reason, "[c]omplete preemption is rare." Moore's Federal Practice, § 107.14[4][b][iii] (3d ed. 2010). In fact, the Supreme Court has found complete preemption in only three cases. *See Beneficial*, 539 U.S. at 10-11 (National Bank Act); *Metro. Life Ins.*, 481 U.S. at 66-67 (ERISA § 502(a)); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968) (Labor Management Relations Act ("LMRA") § 301). That is because the Supreme Court has articulated "exacting standards" for establishing complete preemption — chief among them is the burden of demonstrating congressional intent, clear from the text of the statute, that state law should be entirely displaced. *Lontz*, 413 F.3d at 441 (citing *Metro. Life*, 481 U.S. at 66-67).

### C.   Complete Preemption Does Not Apply

The UAW contends that because all of the Retirees' claims necessarily implicate the duty of fair representation, which federal courts have read into § 9(a) of the NLRA,[6] their claims

---

[6]Section 9(a) of the NLRA reads as follows:

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment: *Provided*, That any individ-

are completely preempted by federal law.[7] Even if we assume some of the Retirees' claims could be recast as falling within the duty of fair representation under § 9(a) of the NLRA, I believe the district court and the UAW have conflated complete preemption and ordinary preemption. Although the duty of fair representation may provide a federal defense to the Retirees' claims, it is a defense of ordinary preemption and not a case where Congress has clearly and unequivocally "displaced any state cause of action."

To begin, finding complete preemption here would fly in the face of the well-established rule that a plaintiff is the master of the complaint. *See Beneficial Nat'l Bank*, 539 U.S. at 12. It is important to keep in context the claims actually pled by the Retirees, which are traditional state-law causes of action for violation of a fiduciary duty arising from their membership in an organization. These state common law "duties of care, fidelity, and loyalty" are the basis, historically and today, of many state causes of action and do not inherently represent an "overwhelming national interest."

Significantly, the Retirees plead no claim against Chrysler, their employer. Neither do they plead a breach of the collective bargaining agreement. Moreover, there is no allegation by the Retirees which makes any term in a collective bargaining

---

ual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further*, That the bargaining representative has been given opportunity to be present at such adjustment.

29 U.S.C. § 159(a).

[7]I agree with the panel in *Lontz* that "[i]f this distinction amounted to deciding which court had the honor of dismissing the case, it might appear to be a dispute over trifles," but I, too, "think more is at stake." 413 F.3d at 442.

agreement relevant to their state law claims. These are significant considerations the Supreme Court has recognized in § 301 cases, such as *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988): "[A]pplication of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." The UAW's attempt to unilaterally recast the Retirees' claims as only being cognizable under the federal duty of fair representation ignores the well-pleaded complaint rule and the power it gives plaintiffs to shape their claims.[8]

In addition, the UAW fails to satisfy the touchstone of complete preemption — namely, congressional intent. Congress must have intended for the federal statute to entirely displace state law in order for complete preemption to adhere. *See Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 231 (4th Cir. 1993). The UAW directs us to no statutory language in § 9(a) of the NLRA, nor to any legislative history, showing a clear intent by Congress to treat *all* state law claims relating to *all* fiduciary duties owed to union members by virtue of their union membership as exclusively federal claims under § 9(a). On its face, § 9(a) simply does not reveal an intent to always foreclose state law claims for breach of a fiduciary duty arising from union membership.

The UAW's failure to identify any congressional intent for complete preemption is not surprising, given that the duty of fair representation is a judicially-created duty. That is to say, one would not expect to find a clear statement of congressio-

---

[8]While it is an open question whether some of the Retirees' claims invoke a state-law duty, as pled, or whether they should be construed as having a nexus to the UAW's duty of fair representation, other Retiree claims appear more attenuated from a federal cause of action. For example, the Retirees' claim that the UAW, when asked, owed its members a duty "to warn them of the financial implications of retiring," J.A. at 55, would seem weighted toward the pled state-law fiduciary duties of "care, fidelity, and loyalty" and not toward a federal duty of fair representation.

nal intent regarding a duty created by the judiciary. *See Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979) ("The right to bring unfair representation actions is judicially 'implied from the statute and the policy which it has adopted . . . .'" (quoting *Steele v. Louisville & N. R. Co.*, 323 U.S. 192, 204 (1944))); *Wrobbel v. Asplundh Constr. Corp.*, 549 F. Supp. 2d 868, 875 (E.D. Mich. 2008) ("[T]he fact that the federal duty of fair representation is a *judicial* creation tends to undermine the argument that *Congress* intended § 9(a) to supplant state law with a federal cause of action."). And there can be no doubt that the Supreme Court has labeled the duty of fair representation an implied duty. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 48 (1998) (emphasis added) ("[T]he union's duty of fair representation is *implied* from its status as the exclusive bargaining representative of the bargaining unit workers.").

Absent clear preemptive intent, the UAW thus asks us to find that Congress implicitly intended to preempt the Retirees' state law claims based on a duty that is itself implied from the purported preemptory statute. This is one implication too many. A finding of complete preemption so as to establish exclusive federal subject matter jurisdiction in these circumstances would undermine established concepts of federalism, not to mention contradict the clear precedent of this Court that "strongly counsel[s] against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction." *Custer*, 89 F.3d at 1167 (quotation omitted); *see also Lontz*, 413 F.3d at 440.

In the absence of a statutory basis for complete preemption in this case, the UAW and amicus rely on opinions from the Fifth and First Circuits to support their complete preemption argument. These cases are distinguishable and based on conclusory reasoning that conflates complete and ordinary preemption.

In *Richardson v. United Steelworkers*, 864 F.2d 1162 (5th Cir. 1989), employees sued their union in Texas state court

for failing to warn them that their employer had a right to replace them if they went on strike. 864 F.2d at 1164. The *only* basis pled for the employees' cause of action was that the union "acted as bargaining agent for [them]" and, as such, "had a duty to advise them of measures which their employer could, and in reasonable probability would, take" in the event they rejected their employer's final offer and went on strike. *Id.* (emphasis omitted).

Initially, the union removed the case to federal court on the basis that jurisdiction existed pursuant to § 301 of the LMRA, 29 U.S.C. § 185 *et seq.* With leave of court, the union subsequently filed an amended removal petition asserting jurisdiction based on the fact that the plaintiffs' claims were actually "for breach of its duty of fair representation under the NLRA." *Id.* The employees filed a motion to remand the case, which the district court denied. *Id.* at 1164-65.

On appeal, the Fifth Circuit focused on the plaintiffs' sole allegation that "the Union had a duty to advise them of [their employer's] right to replace them if they went on strike," and "*that this duty arose from the Union's status as their collective bargaining agent.*" *Id.* at 1165 (emphasis added). The court specifically noted that the employees "assert[ed] no other source of this duty." *Id.* The *Richardson* plaintiffs thus pled no cause of action based on their union membership or any other state-law duty separate from those imposed by the collective bargaining agreement. Stating that "[t]he Union's right to act as plaintiffs' bargaining agent is conferred by the NLRA," the Fifth Circuit held "that the duties corresponding to this right conferred by federal labor law [were] defined solely by federal labor law" and thus completely preempted state law. *Id.* "As a result of this complete preemption of state law, . . . the district court had removal jurisdiction over the[] action[]." *Id.*

Critical to the court's holding in *Richardson* was the limited duty the Union was said to have breached. As the plain-

tiffs only pled a duty flowing from the collective bargaining agreement, the Fifth Circuit distinguished between the case before it, *i.e.*, one based on the collective bargaining agreement, and one pled solely under state law:

> [T]his case . . . does not present the question of whether the Union was subject to an independent state-law duty of care . . . arising *simply from the relationship of a union to its members*. Plaintiffs here allege a duty arising from the collective bargaining agent's relationship under the NLRA with the bargaining unit members, who may or may not be union members. Indeed, plaintiffs' original petition does not even allege that plaintiffs are or were members of the Union. *Nor does this case involve state law actions that are not preempted because the activity complained of touches interests deeply rooted in local feeling or is only a peripheral concern of the NLRA.*

*Id.* at 1167 (quotations and internal citations omitted) (emphases added).

In stark contrast to the factual basis in *Richardson*, the Retirees' complaint states that "[a]s a result of their union membership, the UAW owed [them] duties of loyalty, fidelity and full disclosure of all material facts." J.A. at 26. Unlike the plaintiffs in *Richardson*, who "did not allege any breach of a state tort duty that exists independently of the NLRA-established collective bargaining relationship, which is the central concern of the NLRA," 864 F.2d at 1167, the Retirees have alleged "'an independent state-law duty of care . . . arising simply from the relationship of a union to its members.'" *See id.* (quoting *Int'l Bd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862 n.5 (1987)).

Putting aside these substantial factual and pleading distinctions between *Richardson* and the case at bar, we observe the

*Richardson* Court's precedential basis for complete preemption does not support its conclusion. In finding complete preemption as a jurisdictional matter, the Fifth Circuit stated

> Under *Vaca*, the NLRA duty of fair representation, for the enforcement of which a federal (and state) court action is authorized, completely preempts state law because of the congressional intent that federal law, developed to further the goals of the NLRA, entirely govern the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity.

*Id.* at 1169.

The *Richardson* Court's reliance on *Vaca v. Sipes*, 386 U.S. 171 (1967) is misplaced. *Vaca* was not a case of complete preemption concerning subject matter jurisdiction in federal court, but instead addressed whether ordinary preemption required the application of federal law *in state court* — the precise question the UAW could raise in the Maryland state court upon remand. Thus, *Vaca* is an unsupportive and inapposite basis upon which to embrace § 9(a) complete preemption. The *Richardson* Court's conclusion is particularly perplexing seeing as it recognized that *Vaca* "held that th[e] federal duty of fair representation preempted state substantive law . . . *though it did not preclude state court jurisdiction*." 864 F.2d at 1166 (emphasis added).

In the other case relied upon by the UAW, *BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America*, 132 F.3d 824 (1st Cir. 1997), tradesmen went to Maine to interview for employment with Bath Iron Works. 132 F.3d at 827. Union representatives participated in the interviews pursuant to a collective bargaining agreement and, according to the tradesmen, assured them of continued employment due to Bath's great need for their skills. *Id.*

Despite these assurances, Bath laid off the tradesmen several months after they began their employment. *Id.* The workers consequently filed suit against the union in state court, alleging, among other things, claims for negligence and fraudulent misrepresentation. *Id.*

The union removed the case to federal court on the basis that the plaintiffs' claims were barred by § 9(a) of the NLRA and/or § 301 of the LMRA. The First Circuit determined § 301 foreclosed most of the employees' claims, but also alternatively opined

> that preemption [based on the duty of fair representation] operates in much the same fashion as [LMRA] section 301 preemption. . . . [W]e hold that a district court possesses federal question jurisdiction when a complaint, though garbed in state-law raiment, sufficiently asserts a claim implicating the duty of fair representation.

*Id.* at 831–32 (internal citations omitted). The *BIW* court then applied the "artful pleading doctrine" to "conclude without serious question that the instant complaint reveals a colorable question of federal law and that, therefore, the district court did not err when it denied the motion to remand." *Id.* at 833. I find the First Circuit's conclusions unpersuasive for several reasons.

First, in support of its holding, the First Circuit relied on *Richardson*, which, for the reasons set forth above, does not set out a well-reasoned basis upon which to find complete preemption. Second, mindful of our obligation to "strictly construe removal jurisdiction," *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994), I am not convinced that the requisite "manifestation of congressional will" can be found with respect to the § 9(a) duty of fair representation to create complete preemption, as opposed to a federal defense of ordinary preemption. Lastly, I note the

First Circuit found, without citation to the text of the statute or any of its legislative history, an implication of complete preemption for an implied duty of fair representation. *See BWI Deceived*, 132 F.3d at 831–33. This simply does not adhere to *Lontz's* requirement that "congressional intent that state law be entirely displaced must be clear in the text of the statute." 413 F.3d at 441. In short, I believe the Fifth and First Circuits conflated complete and ordinary preemption.

Furthermore, I find the reliance by the UAW and amicus on *United Steelworkers of America v. Rawson, 495 U.S. 362 (1990)* puzzling. This is so first and foremost because *Rawson* dealt with the application of ordinary preemption *in state court* and did not involve the issue of jurisdiction in a federal court, much less complete preemption as a basis for federal subject matter jurisdiction. *Rawson* involved a choice of law issue, *i.e.*, whether federal labor law either under § 301 or the duty of fair representation, as opposed to state tort law, applied in a proceeding against a union in Idaho state court. *See* 495 U.S. at 369-72.

Under the facts presented in *Rawson*, the Supreme Court determined that federal law applied to the pending state law claims in state court and that although the plaintiffs could not bring suit under § 301, their claim that the union "committed fraud on the membership in violation of state law . . . might implicate the duty of fair representation." *Id.* at 376. *Rawson* thus involved the application of ordinary preemption as a defense in state court to a state law claim, not complete preemption.

Accordingly, *Rawson* is good authority for the result that should be reached here; that whatever the merits of the Retirees' claims, the UAW's defense is properly adjudicated in state court as a defense of ordinary preemption. *See Vaca*, 386 U.S. at 186, 188 (holding that employees who have failed to exhaust contractual remedies may sue their employer if the union "breached its duty of fair representation in its handling

of [a] grievance" and noting that "the Missouri courts had jurisdiction in this case"); *see also El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 485 n.7 (1999) ("[S]tate courts[] can and do decide questions of federal law, and there is no reason to think that questions of federal preemption are any different."); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12 n.12 (1983) ("If the state courts reject a claim of federal preemption, that decision may ultimately be reviewed on appeal by [the Supreme] Court."). The UAW may have a valid preemption defense, as in *Rawson*, but that defense is not a basis upon which subject matter jurisdiction in a federal court may rest.[9] *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (2009) (noting that "[f]ederal jurisdiction cannot be predicated on an actual or anticipated defense").

In short, the UAW asks us to find exclusive federal subject matter jurisdiction in the face of presumptions in favor of concurrent jurisdiction and against finding complete preemption despite the fact that such a determination lacks a clear foundation in an act of Congress or the precedent of either the Supreme Court or this Court. To do so would eviscerate basic principles of federalism and recast the most basic of constitutional precepts — subject matter jurisdiction — by judicial fiat.

---

[9]The UAW and amicus also contend that a failure to find complete preemption in this case is "wholly inconsistent with the clearly established federal labor law principle that a union owes the same duty of fair representation to all members of the bargaining unit regardless of their union affiliation." Petition for Rehearing and Rehearing En Banc at 7 (quotation and emphasis omitted); *see also* Brief of the Am. Fed'n of Labor and Congress of Indus. Orgs. at 9. While the foregoing quote is an accurate recitation of the principle described, that principle is not relevant to this case.

If the Retirees' claims are barred by the duty of fair representation, then that determination by the state court would give union members no advantage over nonunion members — there would be no basis for a claim by either. Conversely, if some or all of the Retirees' claims are determined by the state court not to involve the duty of fair representation, then a nonunion member could not have made a § 9(a) claim in the first place.

Specifically, the position advocated by the UAW would deprive plaintiffs of the most basic right to plead their claims for relief from injury as they deem appropriate. While that right is circumscribed in a few narrowly defined instances, the denial of an injured party's right to seek relief for state-authorized claims in the proper state court is a foundational element of our constitutional system. The UAW's position in this case would wholly undercut that foundation and move far beyond any basis in existing law.

The Supreme Court, "reluctant to infer pre-emption," *Bldg. & Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993), has been steadfast in its support of the face of the complaint rule. *See, e.g.*, *Beneficial Nat'l Bank*, 539 U.S. at 12. In the absence of a clear direction from Congress, which there plainly is not in § 9(a) of the NLRA, or a similarly clear direction from the Supreme Court, there is no basis upon which to conclude that § 9(a) of the NLRA "wholly displaces" every state law cause of action in circumstances like those currently before us. *Id.* at 8.

Thus, I would conclude the doctrine of complete preemption does not apply here. Consequently, there was no basis for removal to the district court under 28 U.S.C. § 1441 and the district court lacked subject matter jurisdiction over the Retirees' complaint.[10,11]

---

[10]In the event that we found, as I have, that the duty of fair representation in § 9(a) does not completely preempt the Retirees' state law claims, the UAW argued in the alternative that the claims are completely preempted by § 301 of the LMRA. Preemption under § 301 can only occur when claims are "founded directly on rights created by collective-bargaining agreements" or are "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.*, 482 U.S. at 394 (quotation omitted).

The UAW bases its argument on the following allegations made by two of the retiree plaintiffs: that they "contacted their Union representatives

## III.

While I concur in the judgment of the Court, I respectfully disagree with the basis for that judgment as set out in the majority opinion. I would adopt the last-served defendant rule as the law of this Circuit and affirm that part of the district court's judgment holding that the notice of removal was timely under § 1446(b). I would further hold that the district court was without subject matter jurisdiction over the Retirees' claims because the doctrine of complete preemption does not apply in this case. Accordingly, I would reverse the judgment of the district court and remand this case to the district court with instructions to remand the case to the Maryland state court on the basis of the lack of complete preemption.

---

and asked to grieve or appeal the UAW's false statements to them regarding the offer of a retirement package and retroactive nature of any package subsequently offered. Both . . . were informed by Union officers that no grievance and/or appeal could be filed regarding this matter." J.A. at 51-52. These allegations, it is argued, "requires interpretation of the CBA." Appellee's Br. at 39. I disagree.

As the Retirees point out, their complaint does not charge the UAW with negligence by denying access to a grievance procedure or with negligent representation during a grievance proceeding. These allegations, which appear in the "fact" section of the complaint, merely explain what inquiries some of the plaintiffs made in response to learning they were ineligible for the incentive packages. Unlike the situation in *BIW Deceived*, in which the union stood "accused of violating a duty of care that flowed to it pursuant to the [collective bargaining agreement]," 132 F.3d at 833, this record does not indicate any need to analyze the terms of a collective bargaining agreement in connection with the Retirees' claims.

In sum, the Retirees' state law claims for negligence and negligent misrepresentation are not preempted by § 301.

[11]I express no view as to the application of ordinary preemption as a defense which the UAW may raise in the state court. I also "express no view as to whether such claims on the merits are preempted by federal law, as this is a question for state courts to resolve." *Lontz*, 413 F.3d at 438.

Chief Judge Traxler, Judge Wilkinson, Judge Niemeyer, and Judge Duncan join in this opinion concurring in the judgment.