**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 3, 2016[*]
Decided February 4, 2016

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-2358

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 10 CR 0026 |
| ALEX A. CAMPBELL, | |
| *Defendant-Appellant*. | Robert W. Gettleman, *Judge*. |

**O R D E R**

Alex Campbell preyed on young women who were in the United States unlawfully, first gaining their trust through promises of immigration benefits and financial protection, and then coercing them to work for him as prostitutes. A jury convicted him on eleven counts of obtaining labor and services of others by force, serious harm, and abuse, 18 U.S.C. § 1589; concealing, harboring, and shielding

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

undocumented aliens for commercial advantage, 8 U.S.C. § 1324(a)(1)(A)(iii), (a)(1)(A)(v)(II), and (a)(1)(B)(i); concealing identity and immigration documents, 18 U.S.C. § 1592(a); sex trafficking, 18 U.S.C. § 1591(a); and extortion, 18 U.S.C. § 1951(a). The district court—after granting Campbell's motion for acquittal on one count of concealing immigration documents—sentenced him to life in prison. We affirmed his convictions and sentence on direct appeal, *see United States v. Campbell*, 770 F.3d 556 (7th Cir. 2014), and now Campbell appeals from the denial of a motion for a new trial. That motion is based on what Campbell says is new evidence that, before one of the women met him, she had entered a sham marriage in hopes of gaining residency. We agree with the district court that this accusation lacks an evidentiary foundation and, thus, could not warrant a new trial.

Our opinion in Campbell's direct appeal details the facts underlying his convictions, *see Campbell*, 770 F.3d at 559–68, but some background is necessary here. Briefly, Campbell lured undocumented women into prostitution by promising them housing and legitimate jobs at his massage parlors. Once he had gained their trust he isolated them from their families and friends and seized their identification, immigration documents, and money. He gave the women new names and branded them with tattoos. He then physically and emotionally abused them and threatened to have them deported if they did not have sex with him or others for money.

One of Campbell's victims was Masha, a citizen of Belarus. Campbell had met Masha when she was 20 years old and attending school for massage therapy. When he learned that Masha had overstayed her visa, Campbell offered to get her a green card for $14,500. She gave Campbell her passport and identifying information and promised to pay him $1,000 each week, in addition to working in his massage parlors without pay. When she fell behind with her payments, Campbell demanded that Masha have sex with him and his business partner as punishment. Afterward he continued coercing her to have sex, and even after she had paid the full $14,500 Campbell extorted thousands of dollars more by imposing "fines" for misbehavior. Eventually Masha contacted U.S. Immigration and Customs Enforcement, which led to an investigation and Campbell's arrest.

During discovery the government wrote Campbell's attorney saying that Masha had been married and divorced before meeting Campbell. The government added that it did not have reason to think that the marriage had been fraudulent. The government also disclosed that some victims who would testify at trial intended to apply for a T-visa (a temporary visa authorizing a victim of human trafficking to remain and work in the

United States). Masha testified at trial, along with other victims, and Campbell was convicted of ten counts related to sex trafficking, extortion, concealing immigration documents, and shielding and harboring undocumented aliens for commercial gain.

While his direct criminal appeal was pending, Campbell learned about a pair of notices issued many years earlier by immigration authorities informing Masha that her two applications to adjust status had been rejected, one because she had not been present in the United States before 1982 and the other because her application was incomplete. Masha had submitted those applications before her marriage, and in his motion for a new trial Campbell argued that the two notices prove that Masha had reacted to the denials of relief by entering into a sham marriage as another way of adjusting status. This information, said Campbell, was concealed by the government and could have been used at trial to attack Masha's credibility. He added that the notices further prove that Masha was willing to lie at trial to obtain immigration benefits.

A district court is permitted to vacate a conviction and grant a new trial based on newly discovered evidence "if the interest of justice so requires." FED. R. CRIM. P. 33. A defendant seeking a new trial under this rule "must provide evidence that (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. Westmoreland*, 712 F.3d 1066, 1072 (7th Cir. 2013); *see United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012). The district court concluded that Campbell's claim of newly discovered evidence of a sham marriage fails this test. Campbell had known before trial about Masha's marriage, the court reasoned, and all that is "new" is Campbell's conjecture of fraud based on the immigration notices. And those notices are not evidence of a sham marriage, the court explained, because neither of the underlying applications depended on Masha's marital status. In fact, the court noted, Masha had used her maiden name on both applications. Moreover, even if Campbell actually had proof that Masha's marriage was a sham, the court continued, that evidence would merely attack her credibility, which would not be a ground for a new trial. *See Westmoreland*, 712 F.3d at 1072; *Hagler*, 700 F.3d at 1101; *United States v. Ervin*, 540 F.3d 623, 631–32 (7th Cir. 2008). Nor would such evidence likely lead to acquittal, the court concluded, as Masha was just one of many witnesses who testified about Campbell's extensive criminal conduct.

On appeal Campbell challenges the district court's conclusion that he did not present any evidence, much less "new" evidence, of a sham marriage. But we agree with

the court that Campbell's motion for a new trial rests wholly on conjecture about Masha's marriage. The two notices predate Masha's marriage and convey that her applications to adjust status had been rejected for reasons having nothing to do with her marital status. And even if Campbell could show that Masha had been in a sham marriage, it is unclear how that evidence would have affected her credibility. The jury heard evidence that Masha wanted to obtain a visa and, for that reason, had agreed to Campbell's proposal to get her one—surely not by lawful means—for $14,500. Thus, further evidence that Masha had entered a sham marriage hoping to obtain immigration benefits by a different unlawful route would be "merely impeaching and cumulative," and not a ground for a new trial. *See Erwin*, 540 F.3d at 631. Moreover, the district court recognized that undermining Masha's credibility would be unlikely to lead to Campbell's acquittal given the many other women who testified about the same conduct as Masha.

We have reviewed Campbell's remaining contentions but conclude that none has merit. Therefore, the district court did not abuse its discretion in denying his motion for a new trial.

AFFIRMED.